## COMMONWEALTH *vs.* HUGH TIVNON & another.

An indictment on *St.* 1853, *c.* 194, against two, for having in " their possession," on a certain day, certain tools and implements, designed and adapted for breaking open buildings, sufficiently charges a joint possession; and is supported by proof of the commission of the offence on any day before the finding of the indictment.

An indictment on *St.* 1853, *c.* 294, which alleges an intent to use the implements for the purpose of breaking open houses and shops, in order to steal from the owner thereof money and goods, need not describe the buildings intended to be broken open, nor the property intended to be stolen, nor name the owner of either.

An indictment on *St.* 1853, *c.* 194, is supported by proof that some of the implements described in the indictment were in the possession of the defendant, and adapted and designed for the unlawful purpose specified.

It is not necessary, to support an indictment on *St.* 1853, *c.* 194, that the tools or implements should have been originally made or intended for an unlawful use.

On the trial of an indictment against two, on *St* 1853, *c.* 194, after proof of a common design or enterprise of the defendants, the declarations of one in relation to the joint enterprise are admissible in evidence against both.

An indictment on *St.* 1853, *c.* 194, is maintained by proof of possession, either actual or constructive, with the guilty intent. But proof of possession of implements by one defendant, both intending to use them in a joint undertaking, is not sufficient.

INDICTMENT on *St.* 1853, *c.* 194, which provides for the punishment of " every person who shall knowingly have in his possession any engine, machine, tool or implement, adapted and designed for cutting through, forcing or breaking open any building, room, vault, safe or other depository, in order to steal therefrom any money or other property, knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ the same for the purpose aforesaid."

The indictment alleged that Hugh Tivnon and James Johnson, on the 2d of November 1855, at Boston, " did feloniously and knowingly have in their possession certain implements, that is to say, thirty seven false keys, four skeleton keys, three wax key impressions, one pair of key forceps, one plate, one jimmy, two bitts, one bitt-stock, designed and adapted for forcing and breaking open houses, stores, shops, rooms, safes, trunks and vaults, in order feloniously to steal, take and carry away from the owner thereof, any money, and other goods and chattels therein found; they, the said Tivnon and Johnson, then and

there knowing the aforesaid implements to be designed and adapted for the purposes aforesaid, and with the intent then and there of said Tivnon and Johnson to use the same for the purposes aforesaid; against the peace of said commonwealth, and contrary to the form of the statute in such case made and provided."

Tivnon pleaded guilty, and Johnson was tried in the municipal court at December term 1855, before *Abbott*, J., who signed a bill of exceptions of which the following are the material parts:

" The Commonwealth's attorney offered evidence that Tivnon carried to his boarding-house certain implements as described in the indictment, and there had them in his separate possession; also certain conversations of Tivnon, relative to said implements and their possession and use, but not in the presence or knowledge of Johnson. This was objected to by the defendant's counsel, on the ground that the defendant was charged with a felony, and not a conspiracy to commit a felony, nor a misdemeanor; that as the government had elected to charge and make out a joint possession, it could only prove a joint and actual possession, and not a separate possession; and that no possession of, or act done or word said by Tivnon, not in the actual presence or knowledge of Johnson, could be put in evidence against him. On the other side, it was claimed that the case was to be tried like a charge of conspiracy, and that the acts, sayings and possessions of one were the acts, sayings and possessions of both. The presiding judge overruled the objection, and admitted the evidence, after the government had offered evidence tending to show that both Tivnon and Johnson were engaged in a common enterprise, in which they intended to use some of the implements described, for the purposes described.

" The defendant's counsel also asked the court to rule that the government must offer some evidence to prove that the implements set forth were adapted and designed as alleged; that, under the statute upon which this indictment was found, the said implements must have been made and designed originally for the purposes alleged, not such instruments as are made,

adapted and designed for honest and useful purposes; that the jury, before they can convict, must be satisfied that the defendants had an actual joint possession on some particular day; and that the implements must not only be designed and adapted for cutting through, forcing or breaking open, but that the intent of the defendants must have been to use them for said purposes, in a forcible manner, viz: by cutting through, forcing or breaking open.

" But the court refused so to rule, and ruled that, in order to constitute the offence in question under this form of indictment, the government must make out the following propositions beyond all reasonable doubt:

" 1st. That the defendant had in his possession some of the different articles, described in the indictment, within the county of Suffolk, at some time since the passing of the statute in question, before the finding of the indictment; and that such articles were implements designed and adapted, at the time of such possession by the defendants, for the purpose of breaking open and forcing either houses, stores, shops, rooms, safes, trunks or vaults.

" 2d. That, while so possessing said implements, the defendants knew that they were adapted and designed for the purpose of breaking or forcing open either houses, stores, shops, rooms, safes, trunks or vaults, and intended and designed to use the same for the purpose aforesaid, in order feloniously to steal from the owner thereof any money or goods and chattels to be found in said houses, stores, shops, rooms, safes, trunks or vaults, so intended and designed to be broken open or forced.

" 3d. That the government having elected to go for a joint possession of both the parties indicted, the possession to be proved as aforesaid must be the joint possession of the defendant on trial and the other party indicted with him; and that a joint possession would be constituted by showing that the implements in question were in the possession of either of the defendants, both of them participating in a common intent and design to use the same in a joint undertaking and enterprise of executing the several purposes aforesaid.

32 *

" 4th. That under the election made by the government as aforesaid, any such possession of the implements aforesaid, with the intent and for the purposes aforesaid, by either of the defendants separately, such intent and purpose not participated in by both, would not be sufficient to entitle the Commonwealth to a verdict.

" In reference to what is necessary to constitute an implement described in the statute, the jury must be satisfied that some of the articles described in the indictment were implements or instruments from their character and description actually adapted to and capable of being used in the breaking open or forcing houses, stores, shops, rooms, safes, trunks or vaults, for the object set forth in the statute; and that while in the possession of the defendants they designed and intended to use them for that purpose; that it was not necessary that such articles should have originally been made, to be used for the purposes aforesaid; that the burden of proof was upon the government, to establish such adaptation and design from all the evidence in the case; and that, in passing on this question, the jury had a right to consider the character, form, make and materials of the implements themselves, as well as the purposes for which the defendants declared they intended to use them.

" Upon the character of the acts necessary to constitute the forcing or breaking open alleged in the indictment, the using of any degree of force to open a door, or window in, or remove any part of a house, store, shop or room, so as to make an entry, or to open a trunk, safe or vault, either by the use of a key, or any other instrument or implement, would be sufficient to constitute the breaking open and forcing, alleged to be intended and designed."

Johnson, being convicted, alleged exceptions to the rulings of the court. Both defendants also excepted to the overruling by the court of the following motion in arrest of judgment:

" 1st. Because the indictment does not allege any joint possession by the defendants, or that they had all the said implements at one and the same time on any particular day.

" 2d. Because there is no allegation that all of said implements were adapted and designed for the purposes set forth.

" 3d. Because there is no description of the building, shop, &c., upon which such implements were to be used, whether in or out of the State, nor the name of the owner, whether known or unknown, nor of the property to be stolen, nor of the owner, whether known or unknown.

" 4th. Because there is no allegation of an intent jointly to use said implements, as set forth."

*J. H. Bradley*, for the defendant.

*J. H. Clifford*, (Attorney General,) for the Commonwealth.

BIGELOW, J. 1. There is nothing in the nature of the offence with which the defendants stand charged, which renders it several, so that it cannot be committed in concert by two or more persons. It does not resemble perjury and other similar crimes, which must necessarily be the distinct act of one individual, in the commission of which another cannot join ; but, like most criminal acts, it may well be the joint act of two or more. The possession of burglarious implements with a guilty intent is the gist of the offence set out in the indictment. Such possession may be joint as well as several ; and where the guilty intent of several is manifested by their joint act, it becomes a joint offence. In such cases, by the well settled rule of criminal pleading, all who join in the commission of the act may be indicted either jointly or separately. 2 Hale P. C. 173. *Regina* v. *Atkinson*, 1 Salk. 382. The offence charged in the present case is analogous to that of having in possession counterfeit coin with a guilty intent, of which two or more persons acting in concert may be jointly indicted. *Regina* v. *Rogers*, 2 Mood. 85. *Regina* v. *Williams*, Car. & M. 259. The allegation in the indictment sufficiently sets forth that the tools or implements were in the possession of both the defendants, and charges a joint offence in apt words and according to the precedents.

2. As the offence charged in the indictment was one into which time did not enter as an essential ingredient, it was sufficient to allege it on any day after the passing of the *St.* of 1853, *c.* 194, which created the offence, and before the finding of the indictment. Under this allegation it was competent to prove the commission of one offence by both defendants on any

day after the statute took effect and before the indictment was found. Archb. Crim. Pl. (5th Amer. ed.) 40, 41.

3. The gist of the offence being the possession of the burglarious implements with an intent to use them for the purpose of breaking and entering a shop, building, safe or other depository of money or goods, in order to steal therefrom, it was sufficient to allege such possession with the guilty intent, without further specific averment. The offence was complete when the tools were procured with a design to use them for a burglarious purpose. A general intent was sufficient. It was not necessary to allege or prove an intent to use them in a particular place, or for a special purpose, or in any definite manner. In this respect, the offence charged is similar to that of having in possession counterfeit bills with intent to utter them as true. It is never necessary to aver or prove the time, place or manner in which the bills were intended to be uttered. Archb. Crim. Pl. 513.

4. The indictment properly charges that all the instruments or tools named therein were adapted and designed for the unlawful purposes specified. But it was not necessary to prove either that the defendants were possessed of all the implements described, or that all of them were designed or adapted to effect the objects charged in the indictment. The offence was the same, and the like punishment was prescribed, whether the defendants were found guilty of having in their possession, with an unlawful intent, any one or all of the implements specified. The number of articles alleged was therefore wholly immaterial. It was no variance if only one of them was proved to have been in the possession of the defendants as charged, and such proof was sufficient to constitute the entire offence set out in the indictment. Archb. Crim. Pl. 49.

5. Nor do we think it necessary, in order to create the offence which the statute is designed to punish, that it should appear that the tools or implements were originally made or intended for an unlawful use. If they are suitable for the purpose, so that they can be used to break and enter burglariously, it is wholly immaterial that they were also designed and adapted for

honest and lawful uses. A chisel or centre-bit, though a tool in common use for ordinary purposes, is quite as efficacious in the hands of a burglar to carry out his felonious intent, as a jimmy or a lock-picker, which is made for the sole purpose of being used to break and enter buildings.

6. A common design or enterprise between the defendants being first proved, it was clearly competent to admit the declarations of one of them, in relation to the joint undertaking, to affect both. This rule is not confined to cases where a conspiracy is charged, but it is applicable wherever a combination to effect a particular object is established. It rests on the principle that each is agent for the other in all matters relating to the common object, and the acts and declarations of one in furtherance of such object are admissible to affect the principal as well as the agent. 1 Greenl. Ev. § 111, and cases cited.

7. We have no doubt that proof of possession by the defendants of any of the implements named in the indictment, either actual or constructive, would be sufficient evidence to warrant a conviction, if accompanied by the guilty intent. But what is meant by constructive possession? It would be proved by evidence that the implements were held by one for himself and as agent for another; that they were jointly bought and owned, but kept by one only, or procured and held by one by mutual agreement or at the request of another; or that they were deposited in some place mutually agreed on, to which either could resort at pleasure. These and other instances which might be stated would constitute constructive possession.

But the instruction given to the jury in the present case on this point went further. It not only authorized the jury to convict the defendants on proof of a constructive possession, but it warranted a conviction of both, although there was evidence of possession, either actual or constructive, by one only. The instruction was, that the possession of one, both intending to use them in a joint undertaking, was the possession of both. The error in this proposition is, that it makes the guilty intent, without possession, the sole ingredient in the offence; whereas the statute punishes such intent only when it is connected

with possession of the burglarious implements. Under the instruction given to the jury, a person might be convicted on proof that he intended to unite in a joint undertaking or enterprise to commit a burglary before any tools or implements were obtained for the purpose, although, when they were subsequently procured and in the possession of his associate, in order to carry out the preconcerted design, he had abandoned his unlawful intent and had then determined not to use the implements for the purpose for which they were obtained. We are therefore of opinion that there was a misdirection on this point, and that there must be a new trial.　　　　*Exceptions sustained.*