The appellant was convicted by a Mobile Circuit Court jury for possessing burglar's tools in violation of § 13A-7-8, Code of Alabama 1975. After the jury verdict, the appellant was adjudged a habitual felony offender and sentenced to twenty years.
On January 22, 1982, Mobile Police Officer Gary Smith responded to a radio dispatch concerning a suspicious vehicle at 3050 Old Shell Road in Mobile County, Alabama. Smith arrived about 12:45 a.m. and saw an unoccupied "69 Pontiac LeMans, two door" in a gravel parking lot owned by the complainant, Norman Lowell. According to Smith, "we ran a tag check; we checked the car out, looked it over and couldn't see anything physically wrong with the car at that time. It was unoccupied too." Further, Smith stated "there was nothing wrong with the tires."
Before leaving, Smith advised Lowell to call the police if the occupants returned. Smith then left and began patrolling the area. About 2:14 a.m., Smith was patrolling in the vicinity of Lowell's residence when he heard Lowell call to him. He saw appellant lying "spread-eagle" in front of Lowell's residence. Lowell was at an upstairs window holding a gun on appellant. Smith saw, in the appellant's hand, a ballpeen hammer, a nail prying tool, a broken hacksaw blade and a screwdriver. He found a flashlight and a pair of gloves in appellant's pocket.
The appellant was placed under arrest and read his constitutional rights from a "Miranda" card. At that time the appellant told Smith "he'[d] only been there ten minutes before I got there, and the reason he was there, he was there to change a flat tire that went flat while he was going down the road."
Norman Lowell testified that he lived at 3050 Old Shell Road in a residence above his barber shop. On January 22, 1982, he was awakened by his wife who told him a car had driven onto their gravel driveway. Lowell looked out their upstairs bedroom *Page 638 
window and saw an unoccupied car. He then called the police. When they arrived, he went out to the car while the police examined it.
According to Lowell, he deflated the right rear tire after the police left and returned to the upstairs bedroom. In approximately forty-five minutes he saw a man, whom he identified at trial as the appellant, walking on the opposite side of the street toward the service station on the corner. The man went into the Spur Station and immediately ran out and walked up the street. He crossed the street and went to the unoccupied car in Lowell's driveway. The man opened the car door and removed something from the dash and then opened the trunk and removed some tools. After closing the trunk, the man walked out of Lowell's yard onto Old Shell Road carrying the tools. At that moment, a passing car's lights "shined on him" and he ran behind Lowell's car which was parked near the unoccupied car. When the car passed the man got up and started to walk away. At that point, he was stopped by Lowell, who was holding a gun on him from the upstairs window. Within minutes the police arrived and arrested the man.
 I
The appellant contends that the State failed to prove a prima facie case of possession of burglar's tools and therefore the trial court erroneously denied his motion to exclude. He argues that the State did not prove that he had the tools in his possession with the intent to commit any burglary or any theft and that the tools found were not of the class proscribed by the legislature.
Section 13A-7-8, Code of Alabama 1975, provides, in pertinent part:
 "(a) A person commits the crime of possession of burglar's tools if he:
 "(1) Possesses any explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking and
 "(2) Intends to use the thing possessed in the commission of an offense of the nature described in subdivision (a)(1) of this section."
The indictment, in this case, alleged, omitting the formal parts, that:
 "LARRY DARNELL BURRELL whose name is to the Grand Jury otherwise unknown than as stated did possess an explosive tool, instrument, or other article, to-wit: a hammer, a screwdriver, flashlight, or gloves, which is adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking, with intent to use the same, in the commission of an offense involving forcible entry into premises or theft by a physical taking, in violation of § 13A-7-8 of the Code of Alabama, against the peace and dignity of the State of Alabama."
The possession of burglar's tools with the "intent to use the thing[s] possessed in the commission" of a burglary or a theft is the gist of the offense set out in the foregoing indictment.
A leading case on the subject of possession of burglar's tools is Commonwealth v. Tivnon, 74 Mass. (8 Gray) 375, 69 Am.Dec. 248 (1857). In discussing a statute similar to §13A-7-8, the Massachusetts Supreme Judicial Court stated:
 "The gist of the offence being the possession of the burglarious implements with an intent to use them for the purpose of breaking and entering a shop, building, safe or other depository of money or goods, in order to steal therefrom, it was sufficient to allege such possession with the guilty intent, without further specific averment. The offence was complete when the tools were procured with a design to use them for a burglarious purpose. A general intent was sufficient. It was not necessary to allege or prove an intent to use them in a particular place, or for a special purpose, or in any definite manner. In this respect, the offence charged is similar to that of having in *Page 639 possession counterfeit bills with intent to utter them as true. It is never necessary to aver or prove the time, place or manner in which the bills were intended to be uttered." [Emphasis added]
See also, People v. Taylor, 410 Ill. 469, 102 N.E.2d 529
(1951); Commonwealth v. Tilley, 306 Mass. 415, 28 N.E.2d 245
(1945); Commonwealth v. Anderson, 245 Mass. 184, 139 N.E. 436
(1923).
In accord with Tivnon is 13 Am.Jur.2d Burglary § 74 (1964):
 "[I]ntent or a knowledge upon which an intent may be predicated is essential, but an intent to break into a particular building is not necessary; a general intent is sufficient. The offense is complete when tools or other implements are procured with intent to use them for a burglarious purpose." [Emphasis added]
A felonious intent may be shown by circumstantial evidence. 29 Am.Jur.2d Evidence §§ 266, 363 (1967). See Reed v. State,18 Ala. App. 371, 92 So. 513 (1922). After examining the record and transcript of evidence, we find sufficient evidence to justify an inference that the appellant possessed the tools found in his hands with the necessary intent to use them feloniously.
As to appellant's second argument, if the language of §13A-7-8 were construed to require that "burglar's tools" be especially manufactured and designed for burglarious purposes, it would be almost impossible to convict because very few, if any, tools are manufactured for burglarious purposes. It is, however, difficult to enumerate any tool used in legitimate industry that cannot be used by burglars "from the bungler to the expert." State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938
(1935). Restricting the application of § 13A-7-8 to only those tools specifically and especially designed for burglars would emasculate the statute.
In commenting on the fact that "tools need not be especially or exclusively designed for the specific use of burglars," the court, in Tivnon, supra, observed:
 "Nor do we think it necessary, in order to create the offence which the statute is designed to punish, that it should appear that the tools or implements were originally made or intended for an unlawful use. If they are suitable for the purpose, so that they can be used to break and enter burglariously, it is wholly immaterial that they were also designed and adapted for honest and lawful uses. A chisel or centre-bit, though a tool in common use for ordinary purposes, is quite as efficacious in the hands of a burglar to carry out his felonious intent, as a jimmy or a lock-picker, which is made for the sole purpose of being used to break and enter buildings." [Emphasis added]
In our judgment, it is a matter of common knowledge that a ballpeen hammer, a nail prying tool and a screwdriver are suitable and commonly used for breaking and entering, despite the fact they were originally designed and intended for legitimate purposes. Therefore, they come within the purview of the statute when the requisite felonious intent is present.
Although a flashlight is not adapted for breaking and entering and a conviction under the statute could not be based on the possession of that item alone, it is relevant to the question of intent when possessed along with other tools which are adapted for nefarious purposes. State v. Hefflin, supra, and cases cited therein. It follows that appellant's possession of the gloves would also be relevant to the question of intent.
 II
The appellant complains that the following comments made by the district attorney in his closing argument, which related to a brutal murder committed during a burglary two weeks prior to his arrest were improperly admitted over his objections:
From the record:
 "MS. BEDWELL: Now, this neighborhood, at that time — Ms. Rutland was killed two weeks before this, and —
 "MR. BRUTKIEWICZ: Judge, I'm going to object to that. I don't think that's proper to go into that. *Page 640 
 "THE COURT: Now, what was the — What was it you said? I was looking for something.
 "MS. BEDWELL: Judge, there was some testimony about Ms. Rutland having been killed two weeks before this.
"THE COURT: Oh, Ms. what?
"MS. BEDWELL: Ms. Rutland, at Zimlich's Florist.
"THE COURT: In a burglary or robbery, or something?
"MS. BEDWELL: Yes, sir.
"MR. BRUTKIEWIZ: Judge, that was two weeks —
"MS. BEDWELL: Burglary of a home.
 "MR. BRUTKIEWICZ: — before this. Uh, sometime in that neighborhood. I don't think that's proper to go into that."
In Cazalas v. State, 43 Ala. App. 6, 178 So.2d 562 (1964), this court, quoting from Cross v. State, 68 Ala. 476, stated the rule regarding the propriety of arguments to a jury:
 "Every fact the testimony tends to prove, every inference counsel may think arises out of the testimony, the credibility of the witnesses, as shown by their story, their intelligence, means of knowledge, and many other considerations, are legitimate subjects of criticism and discussion."
The district attorney in the present case was commenting on evidence which had been introduced by appellant's attorney during the cross-examination of Mr. Lowell. That testimony appears in the record as follows:
"Q. Was your house ever broken into?
"A. No.
"Q. Was your neighbor's house ever broken into?
 "A. The lady right across the street was killed about two weeks before.
"Q. Okay. (Pause) Not by this man?
"A. I don't know."
The district attorney here was merely arguing legitimate inferences from the foregoing evidence. Only when the district attorney's "statement is of a substantive outside fact — stated as a fact — and which manifestly bears on a material inquiry before the jury" is the trial court justified in curtailing the comment. Barnett v. State, 52 Ala. App. 260,291 So.2d 353 (1974). The remark here was not an "outside fact" but was part of the testimony elicited by the appellant's trial counsel.
In our judgment, the trial court correctly overruled the appellant's objection to remarks by the district attorney outlined above.
 III
The appellant insists that he was incorrectly sentenced as a habitual felony offender because the State failed to present any evidence of the prior convictions.
Prior to the trial court's adjudging the appellant a habitual felony offender under § 13A-5-9, Code of Alabama 1975, appellant's trial attorney admitted the three prior felony convictions in the following exchange with the court:
 "THE COURT: Now, you understand that this man has three felony convictions already?
"MR. BRUTKIEWICZ: Yes, sir."
Such an admission by counsel on behalf of the accused he is representing, unless qualified, sufficiently "admits all of the ingredients needed to prove the conviction of the crime."Donahay v. State, 287 Ala. 716, 255 So.2d 599 (1971). By admitting the prior convictions, the appellant relieved the State of the burden of proving the prior convictions. Donahay, supra. Therefore, the trial judge properly sentenced the appellant as a habitual felony offender.
No error being found, the judgment by the Mobile Circuit Court is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 641