[No. A112114. First Dist., Div. Two. June 27, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN WESLEY SOUTHARD III, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. B. and II. C.

## COUNSEL

David D. Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Gerald A. Engler, Jeffrey M. Laurence and Sharon G. Birenbaum, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHMAN, J.**—Defendant John Wesley Southard III was arrested following his reckless attempts to evade a police officer who observed him speeding in a residential neighborhood and failing to obey stop signs. A search of defendant's car uncovered a wide assortment of tools and miscellaneous items commonly used by burglars. A jury found defendant guilty of two charges, felony evasion of a peace officer by reckless driving and misdemeanor possession of burglary tools.

Defendant's appeal involves only the misdemeanor conviction, in connection with which he makes three arguments. First, that his conviction must be reversed because there was insufficient evidence he possessed burglary tools with the intent to commit a burglary, as required by Penal Code section 466.[1] Second, that the trial court erred in refusing his request that the jury be instructed on the prosecution's failure to provide discovery, asserting that the instruction was warranted due to the prosecution's claimed failure to inform the defense of defendant's request that the district attorney's office return his "burglary tools." Third, that his counsel's closing argument deprived him of effective assistance of counsel because counsel failed to argue that the deputy district attorney thought defendant was "joking" when he asked for his "burglary tools" back.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

In the published portion of this opinion, we conclude that there was sufficient evidence of defendant's felonious intent to support the guilty verdict. In the unpublished portion, we conclude that defendant's other arguments lack merit. We thus affirm.

## I. BACKGROUND

### A. *Procedural History*

By complaint dated March 16, 2005, defendant was charged in case No. CRF05-9231 with one felony count of evading a peace officer by reckless driving in violation of Vehicle Code section 2800.2 (count 1) and one misdemeanor count of possessing burglary tools in violation of Penal Code section 466 (count 2). The complaint also alleged that defendant committed these violations while on bail and pending trial on previously filed charges within the meaning of section 12022.1. Following a March 29, 2005 preliminary hearing, the court found insufficient evidence of the intent required for a section 466 violation, and held defendant to answer on count 1 but not on count 2. The district attorney filed an information setting forth only the evasion charge and two section 12022.1 enhancements.

On April 18, 2005, the district attorney moved to amend the information to reallege the section 466 charge. Over defense counsel's objection, the court granted the motion, concluding that defendant was not entitled to a preliminary hearing on the misdemeanor charge. On October 21, 2005, an amended information realleged the section 466 charge in addition to the evasion charge. Following a one-day trial on October 24, 2005, a jury found defendant guilty on both counts. That same day, defendant admitted the special allegations.

Meanwhile, on October 3, 2005, the district attorney filed an information in case No. CRF04-10206, charging defendant with felony possession of methadone in violation of Health and Safety Code section 11350 and misdemeanor resisting a police officer in violation of Penal Code section 148, subdivision (a)(1), stemming from an arrest on December 27, 2004. That same day, a jury found defendant guilty on both counts.

On November 17, 2005, defendant was sentenced in both cases. The court imposed the aggravated three-year terms on each felony count, to run concurrently, and then suspended execution of that sentence and granted three years' probation. It also sentenced defendant to 180 days in county jail on each misdemeanor count, to run consecutively.

Defendant filed timely notices of appeal in both cases. However, defendant does not claim any errors in case No. CRF04-10206, and we dismiss that appeal accordingly.

B. *Evidence at Trial in Case No. CRF05-9231*

At 12:00 noon on March 15, 2005, Crescent City Police Officer Eric Apperson was on patrol in a marked police car when he observed a vehicle—subsequently identified as a black Oldsmobile Achieva—speeding north on A Street at an estimated 35 to 40 miles per hour in a 25-mile per hour residential zone. After the Oldsmobile turned onto 5th Street without signaling and in light of the excessive speed at which the car was traveling, Apperson began a pursuit in order to initiate a traffic stop. As Apperson turned onto 5th Street, the speeding Oldsmobile was now traveling towards him, apparently having made a U-turn. As the Oldsmobile passed the patrol car, both driver's side windows were down, and Apperson recognized the driver as defendant, whom he had encountered several times in the past. Through the open window, Apperson yelled for defendant to stop; rather than complying with the command, defendant accelerated, proceeding through an intersection without stopping at the stop sign and continuing to pick up speed. Apperson made a U-turn, activated his overhead lights, and attempted to follow defendant. Defendant continued to accelerate and failed to stop at a second stop sign, where a van was entering the intersection. Noticing that his speed was nearing 50 miles per hour and observing several pedestrians in the area, Apperson ended his pursuit in the interest of public safety. When Apperson terminated the pursuit, defendant's car was traveling in excess of 50 miles per hour.

Apperson then radioed in a description of defendant's car, and seconds later, Crescent City Police Officer Paul Arnett, traveling southbound on El Dorado in a marked patrol car, passed a northbound car resembling the description provided by Apperson. As Arnett made a U-turn to follow the Oldsmobile, it cut down a side street and accelerated. Arnett activated his lights and siren and turned down the following side street. The Oldsmobile then passed directly in front of him, and Arnett observed that there were two occupants in it, both of whom turned and looked at Arnett as he pulled in behind them. At trial, Arnett identified the driver as defendant. As he pursued the car, Arnett accelerated to approximately 70 miles per hour, the maximum speed he felt comfortable traveling in light of the residential nature of the area. The Oldsmobile, however, was pulling away from him at an estimated 90 miles per hour.

Shortly thereafter, Arnett lost sight of the car, but several residents standing in a front yard pointed him down a nearby street. Proceeding down that street, Arnett found the Oldsmobile parked with the driver's door open. The passenger had exited the car and was approaching Arnett's patrol car with his hands raised, and stating he "had nothing to do with it." Defendant was nowhere to be seen, having fled on foot into a swamp behind a nearby

cemetery. Apperson subsequently arrived at the scene and, with the assistance of several other officers, set up a perimeter around the swamp. Defendant was apprehended in the swamp area approximately 40 minutes later.

After defendant had been taken into custody and read his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]), he was asked by an officer why he fled. He responded that it was because his license was suspended. A search of defendant uncovered a key that operated the doors and ignition of the Oldsmobile.

Arnett conducted a full inventory of the Oldsmobile after it had been towed from the scene and found a myriad of tools, including a steel pry bar, a crowbar, five pairs of pliers, a large pair of boltcutters, a sledge hammer, an unspecified number of screwdrivers and hammers, and a tool box. He also found three walkie-talkie radios, two black sweatshirts (including one with a hood), a strap-on head light, a flashlight, a ski mask, a pair of binoculars, a bundle of in excess of 100 keys, and an assortment of loose keys. At trial, Arnett opined that the items were for possible use in a burglary. While acknowledging on cross-examination that the individual items also had legitimate purposes, Arnett explained on redirect that although none of the individual items was illegal to possess, the sum of items made them suspicious because, collectively, the tools would be useful for breaking into a building. Arnett also testified that he had previously been involved in a case involving the theft of a large number of keys from the city yard.

Karen Olson, a chief deputy district attorney, also testified at trial. According to Olson, some time in April 2005, she had a conversation with defendant in which he requested "his burglary tools, a release for his burglary tools." Concerning this, Olson explained at trial that "[i]t struck me as odd. I actually found it amusing. I thought he was joking."

## II. Discussion

### A. *Defendant's Conviction for Possessing Burglary Tools with the Intent to Break or Enter in Violation of Section 466 Is Supported by Substantial Evidence*

■ As pertinent here, section 466 provides, "Every person having upon him or her in his or her possession a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool with intent feloniously to break or enter into any building . . . is guilty of a misdemeanor." It is clear from the language of the statute that in order to

sustain a conviction for possession of burglary tools in violation of section 466, the prosecution must establish three elements: (1) possession by the defendant; (2) of tools within the purview of the statute; (3) with the intent to use the tools for the felonious purposes of breaking or entering. (§ 466.)

As noted above, defendant's first argument is that his conviction for possession of burglary tools in violation of section 466 must be reversed because there was insufficient evidence of the third element, namely his intent to use the tools for a felonious purpose. For the reasons detailed below, we disagree.

The standard of review for evaluating a jury verdict is well established: "When reviewing the sufficiency of evidence to support a criminal conviction, we ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] We view the whole record in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence to determine whether the record discloses substantial evidence. [Citations.] 'Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it.' [Citation.]" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245 [75 Cal.Rptr.2d 40].)

The People maintain that there was ample evidence "supporting[ing] the inference that [defendant] had the requisite intent." They point to the "extreme measures" taken by defendant to evade the police, such as traveling as fast as 90 miles per hour, which, they assert, are reflective of defendant's "consciousness of guilt." They also point to Olson's testimony that defendant asked her for his "burglary tools" back. And they point to the multiple tools recovered from defendant's car, noting Officer Arnett's testimony that "while each tool individually was legal to possess, when everything was taken together, he believed that they were possessed to effect burglaries." Finally, they note that a bundle of over 100 keys was found in defendant's car, and that Officer Arnett testified that a number of keys were recently stolen from a city yard.

Defendant, on the other hand, asserts multiple grounds in claimed support of his position that there was insufficient evidence demonstrating intent. First, he states "there was no evidence of any recent burglaries that might relate to [defendant], or the equipment found in the car, nor was there any showing that [defendant] had a prior history of theft or burglaries. No contraband of any kind was found in the Oldsmobile." And in an effort to undermine Olson's testimony that he asked her for his "burglary tools," he notes Olson

herself testified she thought defendant was "joking" when he made that comment. Additionally, defendant disputes that his flight from the police constituted evidence of intent within the meaning of section 466, arguing that "CALJIC [No.] 2.52, which is based upon . . . section 1127c, specifically instructs the trier of fact that flight alone is not sufficient to prove the crime." Finally, defendant relies on *Cook v. Superior Court* (1970) 4 Cal.App.3d 822 [84 Cal.Rptr. 664] (*Cook*), a case involving the intent requirement in section 466.

We begin with a discussion of *Cook*, demonstrating that defendant's reliance on it is misplaced—that the case is inapplicable to the question before us. The defendants in *Cook* came under suspicion while staying at a resort because one of them fit the description of a man seen in the vicinity of a burglary in the hotel, they looked "out of place," (*Cook, supra*, 4 Cal.App.3d at p. 825), and the registration card for their room showed the names of a man and wife, while the defendants were two males. The police put the defendants under surveillance and eventually arrested them for burglary. A search of the defendants uncovered "in their wallets a black plastic strip and a small piece of metal (a 'shim') in each wallet." (*Id.* at p. 826.)

The defendants were indicted on two charges, the second of which was "possession [of] a tool with intent to feloniously break and enter into a building, in violation of . . . section 466." (*Cook, supra*, 4 Cal.App.3d at p. 825.) The defendants moved to set aside the indictment under section 995, which motion was denied. (4 Cal.App.3d at p. 825) They then petitioned the Court of Appeal for a writ commanding the lower court to dismiss the indictment, arguing in part that "there [was] no legal evidence the 'shims,' resembling in size and texture a medium sized pen point, were possessed with intent to feloniously break and enter into a building." (*Id.* at p. 829.)

The Court of Appeal found merit in their argument, explaining: "An essential element of the offense charged in count 2 is possession 'with intent feloniously to break or enter into any building.' (Pen. Code, § 466.) The hearsay evidence produced at the hearing, although admissible to show probable cause to arrest petitioners [citations], was not admissible to show they feloniously intended to break or enter into any building. No person testified any burglary by means of a 'shim,' or otherwise, actually had been perpetrated, except by hearsay. There was no testimony any of the rooms at the country club were burglarized, or that money or jewelry was stolen from those rooms, except by hearsay. There was no testimony petitioners registered in the hotel under assumed names, except by hearsay. There was no evidence petitioners committed the burglaries reported to the police. The testimony they were jewel thieves was hearsay. No loot was discovered in their possession. The only evidence showing probable cause to believe petitioners

intended to use the 'shims' to feloniously break or enter into a building is hearsay. An indictment based entirely on hearsay evidence is unauthorized and must be set aside on motion under . . . section 995." (*Cook, supra,* 4 Cal.App.3d at p. 829.) In short, since all evidence going to the defendant's intent was based on hearsay, the court issued a peremptory writ. (*Id.* at p. 830.)

Defendant asserts that *Cook*'s conclusion that there was insufficient evidence of intent governs here, arguing as follows: *Cook* "held that there must be some evidence beyond the possession of the tools themselves to show that the burglary tools were intended to be utilized as such. [Citation.] In dismissing the burglary tools indictment, *Cook* emphasized that there was no admissible evidence that the defendants had a history of committing burglaries or theft or that they had committed any burglaries in the area. Finally, no 'loot' was found in their possession. [Citation.] In *Cook*, moreover, the fact that the officers were actually investigating a three-room burglary in the area was not, in itself, sufficient." So, defendant concludes, "In this case, there was no evidence of any recent burglaries that might relate to [defendant], or the equipment found in the car, nor was there any showing that [defendant] had a prior history of theft or burglaries. No contraband of any kind was found in the Oldsmobile." We are not persuaded.

■ The thrust of defendant's argument appears to be that in order to prove intent, *Cook* requires that the prosecution establish that defendant has a history of committing burglaries, committed a burglary in the area, or had "loot" in his possession. This, however, is not the holding of *Cook,* at least not on the issue pertinent here. Rather, *Cook* stands for the proposition that there must be *admissible* evidence of defendant's intent to use the tools for purposes of breaking or entering. And there was such evidence here, abundant evidence.

■ Curiously, although section 466 was enacted in 1872, *Cook* is the only published California case addressing the intent requirement. However, a number of other states have analyzed the intent requirement under statutes substantively similar to section 466, and we turn to those cases for guidance as to what constitutes sufficient evidence of intent. Doing so, we first note that the cases unanimously recognize the required intent to be a general intent, as long ago explained by the Massachusetts Supreme Judicial Court in *Commonwealth v. Tivnon & another* (1857) 74 Mass. 375, 380 [8 Gray 375], a leading case on the subject of possession of burglary tools: "The gist of the offence being the possession of the burglarious implements with an intent to use them for the purpose of breaking and entering a shop, building, safe or other depository of money or goods, in order to steal therefrom, it was sufficient to allege such possession with the guilty intent, without further

specific averment. The offence was complete when the tools were procured with a design to use them for a burglarious purpose. A general intent was sufficient. It was not necessary to allege or prove an intent to use them in a particular place, or for a special purpose, or in any definite manner. In this respect, the offence charged is similar to that of having in possession counterfeit bills with intent to utter them as true. It is never necessary to aver or prove the time, place or manner in which the bills were intended to be uttered." As quoted in *Burrell v. State* (Ala.Crim.App. 1982) 429 So.2d 636, 639, 13 American Jurisprudence second (1964) Burglary, section 74 (1964) is in accord: " '[I]ntent or a knowledge upon which an intent may be predicated is essential, but an intent to break into a particular building is not necessary; a general intent is sufficient. The offense is complete when tools or other implements are procured with intent to use them for a burglarious purpose.' " (Italics omitted, see generally 3 Wharton's Criminal Law (15th ed. 1995) § 333, p. 316.)

While other jurisdictions have recognized a wide range of circumstances that evidence the requisite intent (see, e.g., *State v. Hefflin* (1936) 338 Mo. 236 [89 S.W.2d 938, 946] [listing factors recognized as sufficient by other jurisdictions]; *Commonwealth v. Dionisio* (1955) 178 Pa.Super. 330 [116 A.2d 109, 111, fn. 2] (*Dionisio*) [same]; *Vanlue v. State* (1980) 96 Wis.2d 81 [291 N.W.2d 467, 470] [listing examples of defendants' prior convictions that have been held admissible to show intent]), we discuss only those circumstances present here demonstrating the substantial evidence supporting defendant's conviction.

█ ▪First, cases have recognized that the possession of items commonly used by burglars to facilitate a burglary, but not themselves within the statutory definition of burglary tools, can evidence the requisite felonious intent. Illustrative is *Dionisio, supra,* 116 A.2d 109, where the police went to the defendant's house with a warrant for his arrest on a burglary charge, and the ensuing search uncovered a gun, ammunition, and sketches drawn by the defendant of safes used in the area, with descriptions of how to open such safes. Additionally, "the officers found scattered throughout the house a large quantity of tools and materials, including an electric drill, steel drills of assorted sizes, an extension cord with light attached, a three-pound sledge with a [nine-inch] handle, a three-pound maul with a [nine-inch] handle, drift pins, a pinch bar, pliers, flashlight, 10 pairs of cotton gloves, steel plugs, center punches, glass cutter, files, an illuminated magnifier, a glass magnifier, lock tumblers, and an assortment of picks, tension springs, and wedges used for picking locks." The defendant was convicted of unlawful possession of burglary tools. (*Id.* at p. 110.)

On appeal, the court first observed that other states found it relevant to the issue of intent that the defendant "had other tools or materials in his custody

which indicated he intended to use the tools, with the possession of which he stood charged in the indictment, for a burglarious or criminal purpose, *Com. v. Day*[ (1884)] 138 Mass. 186; *State v. Widenski*[ (1929)] 50 R.I. 148[ 146 A. 407] (flashlight); *State v. Ferrone*[ (1921)] 96 Conn. 160[ 113 A. 452] (revolver); *State v. Hefflin, [supra,]* 338 Mo. 236 . . . (revolver, blackjack and flashlight); *State v. Salernitano*[ (1953)] 27 N.J.Super. 537, 99 A.2d 820 (gloves and flashlight)." (*Dionisio, supra,* 116 A.2d at p. 111, fn. 2.) The court then held that "[t]here were sufficient circumstances present to show [the] defendant's intent to use the tools for felonious purposes," citing as one of the factors the defendant's possession of other items: "While a revolver, blackjack, flashlight, and gloves may not be 'tools or instruments' within the purview of the act, nevertheless these items are commonly used by burglars and can be considered in determining whether the defendant possessed the tools as described in the indictment with the intent to use them for the felonious purposes mentioned in the act." (*Id.* at p. 112.)

Likewise persuasive is *Burrell v. State, supra,* 429 So.2d 636 (*Burrell*). There, the police responded to an early morning report of a suspicious vehicle but found nothing out of the ordinary and left. They were called back to the scene a short while later, where they found an individual training a gun on the defendant, who was lying on the ground with a ballpeen hammer, a nail prying tool, a broken hacksaw blade, and a screwdriver in his hand and a flashlight and a pair of gloves in his pocket. The defendant was convicted of possession of burglar's tools in violation of Alabama Code section 13A-7-8 (1975).[2] (*Burrell, supra,* at p. 637.)

On appeal, the defendant contended "that the State did not prove that he had the tools in his possession with the intent to commit any burglary or any theft . . . ." (*Burrell, supra,* 429 So.2d at 638.) The court of appeal disagreed, finding "sufficient evidence to justify an inference that the appellant possessed the tools found in his hands with the necessary intent to use them feloniously." (*Id.,* p. 639.) The court explained, "Although a flashlight is not adapted for breaking and entering and a conviction under the statute could not be based on the possession of that item alone, it is relevant to the question of intent when possessed along with other tools which are adapted for nefarious purposes. *State v. Hefflin*[, *supra,* 89 S.W.2d 938], and cases cited therein. It follows that appellant's possession of the gloves would also be relevant to the question of intent." (*Burrell, supra,* at p. 639.)

---

[2] Alabama Code section 13A-7-8 (1975), provides, in pertinent part: "(a) A person commits the crime of possession of burglar's tools if he: [¶] (1) Possesses any explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking; and [¶] (2) Intends to use the thing possessed in the commission of an offense of the nature described in subdivision (a)(1) of this section."

Here, defendant was found in possession of numerous tools that clearly fall within the scope of section 466, such as a steel pry bar, a crowbar, multiple pairs of pliers, a large pair of boltcutters, a sledge hammer, screwdrivers, and hammers. At the same time defendant was also in possession of two black sweatshirts, a ski mask, a pair of binoculars, multiple walkie-talkie radios, a flashlight, and a strap-on head light, items without the "other instrument or tool" category contemplated by section 466. (*People v. Gordon* (2001) 90 Cal.App.4th 1409, 1412–1413 [109 Cal.Rptr.2d 725].)[3] Since they are, defendant's possession of these items can be considered when evaluating the purpose for which defendant possessed the tools within the scope of section 466. That evaluation strongly supports the inference that defendant possessed the "burglary tools" with a felonious intent.

A second indicia of intent present here is flight from law enforcement, a factor recognized as pertinent in *State v. Vernor* (Mo.Ct.App. 1988) 755 S.W.2d 283 (*Vernor*) where, early one morning, the defendant was observed by a police officer "in front of a retail store holding a sledge hammer over his head. Defendant was standing about three feet from a large plate glass window, holding the sledge hammer 'as if ready to strike [the window].' " (*Ibid.*) As the officer turned into the parking lot, the defendant ran to a car, threw the sledge hammer inside, got into the car with a companion, and drove off. (*Id.* at p. 284.) The defendant was found guilty of possession of burglar's tools in violation of Missouri Revised Statutes section 569.180 (1986).[4] (*Vernor, supra*, at pp. 283–284.)

The defendant appealed, challenging the sufficiency of the evidence establishing the " 'necessary mental state of possessing burglar's tools for the purpose of using them in an unlawful forcible entry.' " (*Vernor, supra*, 755 S.W.2d at p. 284.) Rejecting that argument, the court pointed to several facts providing such evidence including, as significant for our purposes,

[3] *People v. Gordon* explained that "the meaning of the words 'or other instrument or tool' in section 466 is restricted to a form of device similar to those expressly set forth in the statute. [Citation.] [¶] The items specifically listed as burglar's tools in section 466 are keys or key replacements, or tools that can be used to pry open doors, pick locks, or pull locks up or out." (*People v. Gordon, supra*, 90 Cal.App.4th at p. 1412.) Rejecting the People's argument "that a spark plug piece is an 'other instrument or tool' which satisfies the statutory definition in section 466 because 'it operates as effectively in breaking into a vehicle as unlocking the vehicle door with a metal tool,' " the court explained that "the test is not whether a device can accomplish the same general purpose as the tools enumerated in section 466; rather, the device itself must be *similar* to those specifically mentioned." (*Id.* at p. 1413.)

[4] Missouri Revised Statutes section 569.180 (1986) provides, "A person commits the crime of possession of burglar's tools if he possesses any tool, instrument or other article adapted, designed or commonly used for committing or facilitating offenses involving forcible entry into premises, with a purpose to use or knowledge that some person has the purpose of using the same in making an unlawful forcible entry into a building or inhabitable structure or a room thereof."

"Defendant's flight upon the approach of [the police officer to be] evidence of his consciousness of guilt." (*Id.* at p. 285.) To the same effect are *Hansen v. State* (1974) 64 Wis.2d 541 [219 N.W.2d 246, 249] (fact that the defendant began to walk rapidly away upon approach of the police was a circumstance supporting his conviction for possessing burglary tools); *State v. Hobbs* (1961) 252 Iowa 432 [107 N.W.2d 238, 239] (defendant's attempt to evade police in an automobile pursuit was a circumstance supporting the conviction); and *People v. Thompson* (N.Y.App.Div. 1898) 33 A.D. 177, 178–180 [53 N.Y.S. 497, 13 N.Y. Cr. 273] (fact that the defendant resisted arrest and attempted to flee was a circumstance evincing intent).

Here, the testimony of Officers Apperson and Arnett clearly established defendant's attempt to flee from law enforcement, so much so that he was convicted of evading a peace officer. This flight was suggestive of defendant's consciousness of guilt. It, too, supports a finding of felonious intent.

Defendant sets forth four arguments disputing this conclusion. We reject them in turn. First, defendant contends that "this evidence was specifically held to be insufficient by the magistrate that originally heard this matter." Whatever caused the magistrate to initially dismiss the matter, the amended information realleged the charge.

■ Second, defendant argues that he "explained to the officer that he fled because he was driving without [*sic*] a suspended license." However, defendant did not introduce any evidence at trial that his license was in fact suspended, and in any event the jury was free to reject defendant's explanation. (*Hansen v. State, supra,* 219 N.W.2d at p. 249 ["the weakness of the explanation given by the defendant could be considered in evaluating circumstantial evidence in a burglary case"].)

■ Third, defendant submits that "CALJIC [No.] 2.52, which is based upon . . . section 1127c, specifically instructs that flight alone is not sufficient to prove the crime."[5] While CALJIC No. 2.52 instructs that flight alone may not be sufficient, it specifically recognizes, as does *Vernor, supra,* 755 S.W.2d 283, that flight is relevant and may be considered when determining guilt.

In his last argument concerning his attempt to flee, defendant presents an argument in reply that is of curious logic: "Flight from the officers is a

---

[5] CALJIC No. 2.52 provides: "The [flight] [attempted flight] [escape] [attempted escape] [from custody] of a person [immediately] after the commission of a crime, or after [he] [she] is accused of a crime, is not sufficient in itself to establish [his] [her] guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide."

circular argument that cannot possibly supply [proof of felonious intent]. Since possession of the burglary tools was not sufficient in itself to prove intent, then how could flight prove otherwise? If [defendant] had pulled his vehicle over, as instructed, the possession of the burglary tools would have been insufficient to prove any crime. (*Cook, supra*, 4 Cal.App.3d at pp. 825, 829.) Consequently, respondent's argument regarding flight depends upon the assumption that [defendant] did not understand the law, that he somehow had guilty knowledge of a non existent crime. This is clearly inadequate, especially since the flight was readily explained by the fact that [defendant] was driving under a suspended license." To the extent we can even make sense of this argument, we reject it because, as explained above, we consider flight from law enforcement to be a factor relevant to the intent element.

A third circumstance supporting defendant's intent is that he was driving around with the tools in his car, rather than keeping them in a workshop or garage, a fact cited, for example, in *State v. Furlong* (1933) 216 Iowa 428 [249 N.W. 132]. There, a police search of the defendants' car uncovered multiple fully loaded firearms, gloves, a wrecking bar, a sledge and handle, a hacksaw, screwdrivers, and numerous other such items. On appeal, the defendants challenged their conviction for possession of burglary tools on the ground that they had no intent to use the tools to commit a burglary. (249 N.W. at pp. 133–134.) In enumerating the circumstances supporting the jury's verdict, the court cited as one factor "[t]he fact that most of these instruments, if not all of them, had no particular connection with the operation or care of an automobile, and furthermore the fact that the transportation of these instruments in an automobile served only to separate them from contact with the legitimate uses for which they were adapted, that their legitimate use would naturally confine them to the home or to the shop or to the place of business . . . ." (*Id.* at p. 134.) Likewise here.

Last, but by no means incidentally, we have the unique evidence of defendant's intent not found in any other authority we examined: *defendant requested his "burglary tools" back from the district attorney's office.* Defendant dismisses the significance of this evidence because Olson also testified she thought defendant was "joking." Without reference to authority, defendant asserts that "[s]ince Olson produced the only testimony regarding [defendant's] statement, her interpretation of his intent should be dispositive." In fact, the jury was at liberty to interpret defendant's request as it reasonably saw fit and could have disagreed with Olson that defendant was making a joke.

■ In sum, defendant's possession of other items outside the scope of section 466 but also used to commit burglaries, his flight from law enforcement, his transportation of the suspect items collectively in his vehicle, and

his request for the return of his "burglary tools" constitute substantial evidence of defendant's felonious intent supporting the jury verdict.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

The judgment of conviction is affirmed.

Haerle, Acting P. J., and Lambden, J., concurred.

---

*See footnote, *ante*, page 1079.