Filed 12/10/14  P. v. Reeser CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F068144 |
| v. | (Super. Ct. No. F12903702) |
| KENNETH RAY REESER, | **O P I N I O N** |
| Defendant and Appellant. | |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Houry A. Sanderson, Judge.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Gomes, Acting P.J., Franson, J., and Peña, J.

Defendant Kenneth Ray Reeser was convicted of possession of burglary tools.  On appeal, he contends the evidence was insufficient to support the conviction.  We affirm.

## PROCEDURAL SUMMARY

On August 19, 2013, defendant was charged with second degree burglary (Pen. Code, §§ 459, 460, subd. (b);[1] count 1) and possession of burglary tools (§ 466; count 2).  A jury found him not guilty on count 1 and guilty on count 2.  The trial court granted defendant two years' probation.

## FACTS

On April 28, 2012, James was working at his manufacturing business in Fresno.  At about 11:00 p.m., he stopped his grinder briefly and heard sheet metal rattling at the neighboring vacant business (the business).  He knew the business had regularly been stripped of its metal sheeting and wiring, so he immediately thought it was happening again.  James called his neighbor, Vince, who was also working in a nearby business.

Vince hung up the phone and went outside.  He unlocked his gate and walked toward the business.  He immediately saw defendant riding a bicycle in circles in front of the business, which was unusual and suspicious because none of the businesses in the area were open to the public at that hour.  When defendant saw Vince, he quit circling and rode his bicycle past him down the street.  They made eye contact and Vince got a good look at defendant as he rode within 10 feet of him.

As Vince got closer to the business, he heard unusual noises coming from the back of the property.  He noticed that the gates, which were usually locked, were open.  Wire and part of an antenna were pulled down and lying outside the gate.  He entered the building and walked toward the source of the noise.  He turned on his flashlight, and said, "'What's going on?'"  The noise stopped and someone, Juan Rodriguez, walked toward

---

[1] All statutory references are to the Penal Code unless otherwise noted.

him with a bicycle that looked like an expensive mountain bicycle.  Vince kept the light in Rodriguez's eyes and told him to get on the ground.  Rodriguez kept coming and would not get on the ground.  He said, "'Man, I'm just—I'm just taking a whiz over here.'"  Vince told him in a louder, more aggressive voice to get on the ground or he would shoot him.  (Vince was not carrying a gun.)  Rodriguez got on the ground and lay still.

James arrived and noticed bolt cutters lying on the ground near the gate's hinge.  He watched Rodriguez while Vince called the police.

Officers Gueringer and Sorondo were dispatched following Vince's report that he was detaining a burglary suspect and that a second suspect got away on a bicycle.  As the officers approached the business, they spotted defendant riding a bicycle without a light, so they stopped him for a Vehicle Code infraction.  He was carrying a pink backpack.  Vince identified defendant as the suspect who got away.

When Officers Jouroyan and Oliver arrived a few minutes later, Officer Oliver noticed that the gate to the back parking lot was open, and bolt cutters and a crowbar were lying at the base of the gate.  An antenna and wires had been pulled down onto the ground.  Rodriguez told the officers that he went into the building to use the restroom.  He said he owned the bicycle that was lying down in the parking lot next to a large antenna.  When Officer Oliver asked him why he left his bicycle so far from the building, he said it was expensive.

The inside of the building was in bad condition, with holes in the walls and ceiling, exposed wires, open electrical boxes, and pieces of drywall on the floor.  On a chair were various tools, including a ball-peen hammer, screwdrivers, a pair of pliers, a flashlight, and a lock wrench.  A large piece of drywall on the floor was marked with two sets of footprints that matched the shoes defendant and Rodriguez were wearing.  Both defendant and Rodriguez had drywall dust on their clothing.  Officer Oliver noticed that

3

his own uniform became covered with drywall dust as he walked through a hole in the drywall to reach another room.

Officer Oliver searched defendant's pockets and backpack. The backpack contained various tools, such as a bladed hacksaw, blades, a wrench, and a black cell phone. Officer Oliver asked defendant why he had the tools in his backpack. Defendant said he used them to recycle, but he could not explain how a hacksaw would be helpful in recycling. When Officer Oliver asked him why he was in the area, he said he was just riding through. He said he was homeless. Officers also found a backpack containing tools associated with Rodriguez.

## DISCUSSION

"'To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Bolden* (2002) 29 Cal.4th 515, 553.) We must draw all reasonable inferences in support of the judgment. (*People v. Wader* (1993) 5 Cal.4th 610, 640.) "It is not our function to reweigh the evidence, reappraise the credibility of witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) We look for substantial evidence, and we may not reverse a conviction for insufficiency of the evidence unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the conviction. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Circumstantial evidence can connect a defendant with the crime and prove his guilt beyond a reasonable doubt. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329.) If the circumstances, plus all the logical inferences the jury might have drawn from them,

4

reasonably justify the jury's findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*Ibid.*; *People v. Panah* (2005) 35 Cal.4th 395, 488.)

Section 466 provides:

> "Every person having upon him or her in his or her possession a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool with intent feloniously to break or enter into any building … is guilty of a misdemeanor."

"[I]n order to sustain a conviction for possession of burglary tools in violation of section 466, the prosecution must establish three elements:  (1) possession by the defendant; (2) of tools within the purview of the statute; (3) with the intent to use the tools for the felonious purposes of breaking or entering."  (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1084-1085.)  "'The offense is complete when tools or other implements are procured with intent to use them for a burglarious purpose.'  [Citation.]" (*Id.* at p. 1088.)  Such intent is usually proven by circumstantial evidence. (*People v. Cain* (1995) 10 Cal.4th 1, 47.)  For example, the defendant's possession of other items, even those not falling within the purview of the statute, can be considered when evaluating the purpose for which he possessed the tools. (*People v. Southard*, *supra,* at p. 1090 [considering possession of two black sweatshirts, a ski mask, a pair of binoculars, multiple walkie-talkie radios, a flashlight, and a strap-on head light].)

Here, defendant argues that only one of his tools, the screwdriver, qualified under section 466, and the other tools were not within the purview of section 466 because they were not expressly listed in the statute as burglary tools.  And he argues there was no evidence he possessed the screwdriver for the felonious purpose of breaking or entering.

We conclude that the circumstances, and all the inferences to be drawn from them, fully supported the jury's finding that defendant possessed the screwdriver and probably

5

some of the other tools for the purpose of entering the business and perhaps other buildings. It was late at night, long after the businesses in the area had closed, and defendant was circling suspiciously in front of a frequently burglarized vacant building (not merely riding through the area, as he later told officers), while Rodriguez was inside making noises by moving or touching metal. The gates to the property, which had been closed earlier that day, were open. Bolt cutters and a crowbar lay next to the gates. More tools were inside the building. Defendant was carrying a hacksaw and a wrench, in addition to the screwdriver, all of which could be useful for breaking into a building. Defendant's footprints inside the building, matching the shoes he was wearing, and the drywall dust on his clothes suggested he had been inside the building that night. When defendant became aware of Vince's presence, he left immediately. Together, these facts constituted substantial evidence.

## DISPOSITION

The judgment is affirmed.