Filed 10/20/15  P. v. Oakes CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOHN WILLIAM OAKES,<br><br>        Defendant and Appellant. | A142352<br><br>(Contra Costa County<br>Super. Ct. No. 051325620) |

### INTRODUCTION

Defendant led police on a chase through the streets of Concord in a stolen car.  A jury convicted him of unlawfully driving or taking a vehicle and driving recklessly to evade a police officer, both felonies, and possession of burglar tools, a misdemeanor. (Veh. Code, §§ 10851, 2800.2, subd. (a), Pen. Code, § 466.)  On appeal, defendant contends the trial court erred prejudicially by admitting evidence of a prior similar car chase.  He also argues the court prejudicially misinstructed the jury on the burglar tool possession charge.  We affirm.

### STATEMENT OF THE CASE

An amended information alleged that on November 24, 2013, defendant unlawfully drove or took a vehicle, drove in willful and wanton disregard of the safety of persons or property while fleeing from a police officer, and possessed burglar tools. (Veh. Code, §§ 10851, subd. (a), 2800.2, subd. (a), Pen. Code, § 466.)  It also alleged a prior strike conviction and service of a prior prison term.  (Pen. Code, §§ 667,

subd. (b)-(i)/1170.12, 667.5, subd. (b).)  A jury convicted defendant of all counts. Defendant waived jury on the prior strike and prior prison term allegations and the court found them true.  Defendant was sentenced to prison for five years four months.

## STATEMENT OF THE FACTS

Keith Berry's 1992 green four-door Honda Civic was stolen from its parking place outside the kitchen window of his house in Pittsburg on November 22, 2013.  In 2012, the key broke off in the ignition.  He did not have it fixed; he took the steering column apart so he could start the car by putting his spare key directly into the ignition box.  He had previously owned a Honda Prelude.

On November 24, 2013, Concord police officer Dansie was patrolling Granada Drive in Concord around midnight in a standard black and white Crown Victoria with Concord police markings and symbols on the doors and trunk, a red and blue light bar on top, a red lamp, and a siren.  He was in uniform. He saw a small Honda Civic parked on the right-hand side of the roadway and ran the license plate.  The license plate came back as belonging to a stolen Honda Prelude.  The officer parked on Village Road, which intersects Granada, about 35 feet in front of the stolen car.  As the officer walked towards the unoccupied car, he saw defendant also walking towards it.  Defendant manipulated the car door in some way, opened it, and sat in the car.  The officer walked backwards to his car and got in it.  He heard the Honda start and saw the headlights come on; then he saw defendant drive on Granada and turn right on Village.  As defendant passed the patrol car, the two made eye contact.

Defendant drove slowly down Village Road, obeying all rules of the road.  Dansie drove directly behind him.  Defendant made a left turn onto Landana and drove toward Willow Pass Road.  Up to this point, Dansie had not activated his emergency equipment because he was waiting for backup to arrive.

Two backup Concord police vehicles fell in behind Dansie as defendant was turning right from Landana onto Willow Pass.  At this point, Dansie and the others

2

activated their lights and sirens. Defendant slowed down and made a right-hand turn into Lynwood. He stopped and raised his hands above his head, signaling he was going to comply. As soon as Dansie and the other two police vehicles came to a stop, defendant dropped his hands and rapidly accelerated away.

The three police cars pursued defendant's vehicle with their lights and sirens on. Lynwood is a two-way, densely populated residential street with speed bumps approximately every two feet, cars parked on both sides of the roadway, and a 25-mile-an-hour speed limit. Defendant was driving approximately 40 miles an hour. He drove through a four-way stop at an intersection and continued driving through the neighborhood, over more speed bumps, at approximately 40 miles an hour in a 25-mile-an-hour zone, turning right and left onto different streets. At a roundabout, defendant's car entered a locked-wheel skid, which results when the brakes are applied with enough force to stop the wheels from spinning and causes the them to slide across the pavement. Defendant then collided with the curb and drove over it, continuing to Concord Boulevard. The car made a right-hand turn through a red signal onto Concord Boulevard.

The speed limit on Concord Boulevard is typically 45 miles an hour, but defendant accelerated to approximately 75 to 80 miles an hour. As the car slowed to turn right at Kirker Pass Road, the car's wheels entered into another locked-wheel skid. Defendant accelerated to approximately 90 miles an hour where Kirker Pass turns into Ygnacio Valley Road. He turned right into another 25-mile-an-hour residential street, driving 50 miles an hour, and accelerated through another four-way stop intersection, causing an oncoming car to have to swerve to the side of the roadway to avoid a collision. At Clayton Road, defendant turned left without stopping at another red light and drove at speeds of 60 to 80 miles an hour in a 35- or 45-mile-an-hour zone. He went through two more red lights on Clayton.

At Thornwood Drive and Clayton, he was met with Concord police units and spike strips. Defendant drove over the spikes, deflating his tires, but continued accelerating

3

away on Clayton.  Approaching Denkinger Road, defendant slammed on his brakes and attempted a right turn into Denkinger.  However, the wheels locked and skidded, he lost control of the car and collided with a traffic signal light pole at approximately 50 miles an hour.  Defendant was taken into custody.  The pursuit was approximately eight and one-half miles long and lasted just under 13 minutes.

Defendant was searched and a small bindle of what was later determined to be methamphetamine was found resting behind his ear.

Officer Dansie also found a key chain in defendant's left front pants pocket with a shaved generic car key on it.  He testified:  "Shaved keys are a burglary tool.  They're commonly used in mainly vehicle theft.  To make a shaved key, you will take an existing key to any make vehicle and file down the ridges of that key.  Filing down ridges of that key allows it to bypass the cogs inside different locking devices, mainly in doors, door locks on automobiles, and ignition systems found in cars and motorcycles."  Dansie also inspected the inside of the Honda.  The ignition cylinoide had been ripped from the column; there was no key inside that ignition.  There was a set of pliers on the floorboard and a flat-tip screwdriver stuck between the center console and the driver's seat.  He opined, "Screwdrivers, pliers, pieces of metal, just about anything can be modified to manipulate broken ignition systems."  He also opined it is possible to put a shaved key in the ignition to start a vehicle, remove the shaved key, and continue driving the car.

Concord police officer Miovas testified about a prior similar driving incident involving defendant.  On October 30, 2010, at 9:30 p.m., Miovas was patrolling the area of Landana and Concord Boulevard in Concord in response to a stolen car report.  He saw a green Ford Taurus matching the description of the stolen car at that intersection.  He was in a fully marked Concord police car with Concord symbols on the doors and a full light bar, red lamp, and siren, and was in uniform.  As soon as he illuminated the driver, who matched the description of the person driving the stolen car, the driver took off, running the red light at the intersection.  Miovas turned on his lights and sirens and

4

gave pursuit. The driver turned left onto Concord Boulevard and accelerated. The car was traveling 60 to 80 miles an hour in a 35 to 45 mile an hour zone. The driver ran a red light and kept going at 80 miles an hour, almost hitting a car that was turning left. He ran another red light before coming to Kirker Pass. The driver braked to make a right turn onto Kirker Pass, running that red light as well. The car fishtailed and skidded. He also went through the red light at Clayton Road. The driver continued at speeds of 80 to 85 miles an hour on Ygnacio Valley Road. At Ayers Road, the driver turned right, going through another red light. On Ayers, the driver turned off the car's lights and drove into the oncoming traffic lane, almost hitting another car.

Ayers is residential and the speed limit is not more than 30 miles an hour. The driver was going between 60 and 65 miles an hour. At that point, the officer cancelled the pursuit because it was too dangerous. When he heard that another officer, Turner, had picked up the pursuit, Miovas rejoined the chase at Ayers and Clayton Road, in time to see the driver travel through a stop sign or stop light at that intersection. The driver crossed Concord Boulevard and Kirker Pass Road, into Myrtle Drive, resuming speeds of 80 to 85 miles an hour.

At Cowell, which is like Ayers, the driver again turned off the lights and went into the opposing traffic lane. At this point, everyone but Officer Turner again cancelled the pursuit. Defendant was eventually apprehended in unincorporated Walnut Creek. The total length of the pursuit covered 20 miles and lasted approximately half an hour.

Officer Miovas read defendant his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436) and interviewed him. Defendant said he took the car from a laundromat on Willow Pass Road. He said he fled from the police because he had just stolen a car and he panicked. A search of defendant's person yielded a glass pipe for smoking methamphetamine with a black bindle containing suspected methamphetamine inside the pipe. Defendant explained he used methamphetamine but forgot he had the bindle in his pocket.

5

## DISCUSSION

### *Admissibility of Prior Chase Evidence*

Defendant contends the trial court abused its discretion in admitting evidence of the prior car chase to prove, in the current case, that defendant intended to deprive the owner of his car, intended to evade the police, and had a motive to evade the police because he knew the car was stolen. He argues the evidence was minimally relevant to his motive and intent in the current case, any relevance was substantially outweighed by its prejudicial effect, and the admission of the evidence rendered his trial fundamentally unfair, depriving him of due process and requiring reversal of his conviction in count 1.[1] We disagree.

We review the trial court's evidentiary rulings for abuse of discretion. (*People v. Kipp* (1998) 18 Cal.4th 349, 369, 317.) " '[G]enerally, violations of state evidentiary rules do not rise to the level of federal constitutional error.' " *People v. Samuels* (2005) 36 Cal.4th 96, 114; see *Estelle v. McGuire* (1991) 502 U.S. 62, 72–73.)

Evidence Code section 1101, subdivision (a) prohibits the admission of character evidence to prove a defendant's "conduct on a specified occasion." However, subdivision (b) allows exceptions to that general rule for "evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) "The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect. [Citations.] When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to

---

[1] At trial, defendant objected to admission of the evidence on the grounds it violated Evidence Code sections 352 and 1101, subdivision (a), his Fifth, Sixth and Fourteenth Amendment rights to due process, and did not tend to prove motive or intent.

prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant. [Citation.] Because this type of evidence can be so damaging, '[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded.' " (*People v. Daniels* (1991) 52 Cal.3d 815, 856.)

Here, the connection between the uncharged offense and the ultimate facts in dispute was clear. Defendant's defense to violating Vehicle Code section 10851 was that he did not know the car was stolen. The prosecution's theory of the case was that defendant evaded the police because he knew the car was stolen. Thus, the disputed issues at trial included whether defendant took or drove Keith Berry's car with the intent to permanently deprive him of its possession (on the theory that if defendant did not know the car was stolen, he necessarily lacked larcenous intent) and whether he evaded the police because he knew the car was stolen. If so, his motive was circumstantial evidence that he knew the car was stolen and drove it with the requisite intent. The evidence showed that on a prior occasion defendant drove a stolen car, led the police on a protracted car chase through Concord, had methamphetamine in his possession when he was taken into custody, and admitted to police he evaded them because he knew the car was stolen. This evidence has some tendency in reason to prove (Evid. Code, § 210) that on this occasion, when defendant drove a stolen car through some of the same neighborhoods in Concord and led police on another protracted chase, he did so with the intent to steal the car, and evaded the police because he knew the car was stolen, and not because he had a small amount of methamphetamine on him.

In accordance with this theory of relevance, the trial court instructed the jury: "The People presented evidence that on another occasion, the defendant committed the offenses of unlawful taking or driving of a motor vehicle, evasion of a peace officer, and possession of methamphetamine that were not charged in this case. [¶] . . . [¶] If you decide that the defendant committed the uncharged offenses, you may, but are not

7

required to, consider that evidence for the limited purpose of deciding whether or not: [¶] The defendant acted with the intent to deprive the owner of his car and/or to evade the officer in this case; [¶] or [¶] [t]he defendant had a motive to commit the offenses alleged in this case." We see no error.

In this appeal, defendant acknowledges his "motive for evading the peace officers was in dispute as the prosecution argued that he fled because the car he was driving was stolen, whereas [defendant] contended he fled because he was in possession of methamphetamine." He argues defendant's motive for *taking* the car was not disputed and therefore not material. (*People v. Thompson* (1980) 27 Cal.3d 303, 315, fn. 14, overruled on another point in *People v. Scott* (2011) 52 Cal.4th 452, 470.) Thus, it was error to admit the evidence to prove a motive for the Vehicle Code section 10851 charge. However, defendant was charged with taking *or driving* the car with the requisite intent to permanently or temporarily deprive the owner of title to or possession of the car. Additionally, the instruction presented the jury with choices. The jury was instructed to evaluate whether the evidence showed defendant acted with the intent to deprive the owner of his car *and/or* evade the police in this case; *or* whether defendant had a motive to commit the charged offenses. Defendant's motive for evading the police was an intermediate fact in the chain of inferences leading to a determination of defendant's intent on the Vehicle Code section 10851 charge. We see no error in permitting the jury to consider the evidence of motive for that purpose.

Defendant next claims the 2010 pursuit was not sufficiently similar to the 2013 pursuit to be admissible to show that both the uncharged and charged crimes were explainable as a result of the same motive. (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1381.) He points out that in the prior case, defendant carjacked the car; in the current case, the car was taken from a parking space. However, the jury properly was not informed about the circumstances of the taking, and the circumstances of the taking were not the salient points of similarity *in the car chase* that supported the inference defendant

8

had the same motive and intent in both instances when he recklessly drove the car in his flight from the police. What mattered was that the cars were stolen, not the manner in which they were stolen. In the prior case, defendant knew the car he was driving was stolen because he stole it. Here, the exact circumstances of the actual theft were not in evidence, but the evidence of the highly similar prior car chases, the deconstructed state of the ignition, the discovery of a shaved key on defendant's person, and of other burglar tools inside the car, combined to give rise to the inference that defendant drove the car knowing it did not belong to him, and intending to deprive the owner of its possession or title. The dissimilarity in the way the two cars were stolen did not detract from the permissible inferences to be drawn from the car chase.

Defendant also argues the evidence of the 2010 car chase was cumulative to Officer Dansie's testimony on the intent to evade the officers. We disagree. The evidence of the 2010 pursuit established that defendant admitted he evaded the officers on that prior occasion because he knew he was driving a stolen car, even though he had methamphetamine in his possession. Officer Dansie's testimony did not include a similar admission. The evidence was not cumulative.

Defendant also re-argues the evidence of the 2010 car chase was not sufficiently similar to the 2013 car chase to show that "[b]oth crimes are explainable as the result of the same motive" because the evidence did not indicate what defendant's motives were for either the current or prior car thefts. (*People v. Spector, supra*, 194 Cal.App.4th at p. 1381, italics omitted.) Defendant was charged with taking *or* driving a car belonging to someone else. His motive for taking cars belonging to others was not at issue. The motive at issue was why he *drove* the cars in a reckless manner to evade the police.

Finally, defendant argues the evidence should have been excluded under Evidence Code section 352 because it was minimally relevant, cumulative, unnecessary and inflammatory. We cannot agree. The similarities between the two car chases made the evidence highly probative of defendant's intent and motive. As discussed above, it was

9

not merely cumulative to Officer Dansie's testimony, nor was it unnecessary, given that defendant did not admit his intent or motive in the current case. Finally, the evidence was not inflammatory because the evidence showed the 2010 chase, from the time defendant was first followed by Officer Miovas to the time he was finally taken into custody in unincorporated Walnut Creek, lasted approximately twice as long as the current chase. During both chases defendant broke numerous traffic laws and endangered the public safety, and Officer Miovas testified only about the part of the chase that took place in Concord, through many of the same streets and neighborhoods defendant traversed in 2013. Officer Turner was not called to testify about his part in the pursuit leading to defendant's arrest in Walnut Creek. In our view, the evidence was far more probative than it was potentially prejudicial and the trial court did not abuse its discretion in admitting Officer Miovas's testimony on the 2010 car chase. The trial court did not err, and defendant's constitutional rights were not violated.

### *Instruction on Possession of Burglar Tools*

Defendant argues the trial court's instruction on possession of burglar tools, and its response to a question about the intent required for possession of burglar tools, were prejudicially erroneous because they did not inform the jury that a violation of Penal Code section 466 requires the intent to use the burglar tool for the purpose of breaking and entering into a vehicle.

Penal Code section 466 provides in relevant part: "Every person having upon him or her in his or her possession a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool *with intent feloniously to break or enter* into any . . . vehicle as defined in the Vehicle Code . . . is guilty of a misdemeanor." (Italics added.) There is no pattern CALCRIM instruction for violation of section 466. Therefore, the

10

trial court instructed in the language of the statute.[2] During deliberations, the jury sent a note, asking: "For the instructions for the charge of 'possession of burglar tools' point 2 required that 'he intended to feloniously break or enter into any vehicle.' Does this require that it was proven that he intended *to use* the tool for this purpose?" After conferring with counsel, the court responded in writing: "Interesting phrasing. Law requires possession with felonious intent to break or enter any vehicle." Shortly thereafter, the jury returned its guilty verdict. Defense counsel's seeming acquiescence in the court's written response to the jury after an unreported sidebar conference does not constitute waiver of the instructional error claim. (*People v. Thompkins* (1987) 195 Cal.App.3d 244, 251, fn. 4.) However, we do not find error.

*People v. Southard* (2007) 152 Cal.App.4th 1079 (*Southard*), on which defendant chiefly relies, did not assess instructional error. The issue before the appellate court was whether the trial record contained sufficient evidence to prove the defendant harbored the requisite intent for a violation of Penal Code section 466. (*Southard*, at p. 1085.) After quoting the relevant portions of Penal Code section 466 verbatim, that court stated: "It is clear from the language of the statute that in order to sustain a conviction for possession of burglary tools in violation of [Penal Code] section 466, the prosecution must establish three elements: (1) possession by the defendant; (2) of tools within the purview of the statute; (3) *with the intent to use the tools for the felonious purposes of breaking or entering.* (§ 466.)" (*Southard*, at pp. 1084–1085; italics added.) The *Southard* court buttressed its construction of Penal Code section 466 with reference to out-of-state cases

---

[2] The court's instruction stated: "The defendant is charged in Count Three with possession of burglar tools in violation of Penal Code section 466. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant possessed a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool; [¶] AND [¶] 2. When he did so, he intended feloniously to break or enter into any vehicle."

construing statutes "substantively similar to [Penal Code] section 466" (*Southard*, at p. 1087), and secondary sources. The *Southard* court quoted the following passage from *Commonwealth v. Tivnon* (1857) 74 Mass. 375, 380: " 'The offence was complete when the tools were procured with a design to use them for a burglarious purpose. A general intent was sufficient. It was not necessary to allege or prove an intent to use them in a particular place, or for a special purpose, or in any definite manner. In this respect, the offence charged is similar to that of having in possession counterfeit bills with intent to utter them as true. It is never necessary to aver or prove the time, place or manner in which the bills were intended to be uttered.' . . . 13 American Jurisprudence second (1964) Burglary, section 74 . . . is in accord: ' "Intent or a knowledge upon which an intent may be predicated is essential, but an intent to break into a particular building is not necessary; a general intent is sufficient. The offense is complete when tools or other implements *are procured* with intent to use them for a burglarious purpose." ' ([S]ee generally 3 Wharton's Criminal Law (15th ed. 1995) § 333, p. 316.)" (*Southard,* at p. 1088; italics added.) Nothing in the *Southard* opinion suggests the court intended to create a meaning for the statutory language at issue different from the plain meaning of the statutory language itself.

We see no functional difference between the statutory language and the *Southard* gloss on the statutory language. Put differently, even if we assume the instruction was ambiguous, we see no reasonable likelihood the jury applied the instruction in a way that violates the constitution or state law. (*Estelle v. McGuire, supra*, 502 U.S. at p. 72; *People v. Williams* (2013) 56 Cal.4th 630, 688 & fn. 34.) To possess one of the enumerated tools with the intent "feloniously to break or enter into any vehicle" (Pen. Code, § 466) means the same thing as to possess the tools with the intent "to use [them] for [the felonious] purpose [of breaking or entering]." The court's response— "Interesting phrasing. Law requires possession with felonious intent *to* break or enter any vehicle" (italics added)—basically told the jury in so many words their phrasing and the

12

court's phrasing was a distinction without a difference: the connection between the felonious intent and the purpose of breaking and entering is the intent to use the tools for those purposes. Moreover, the trial court's instruction had the added virtue of clarifying that the intent applied to *any* vehicle, not just Keith Berry's vehicle, and that the focus was on the type of use—for breaking and entering, rather than starting and driving. The trial court's response to the jury's question was not erroneous.

In any event, even if we assume there was error—a proposition of which we are not convinced—any assumed error was harmless beyond any reasonable doubt. (*Neder v. United States* (1999) 527 U.S. 1, 19.) On this factual record, there is no basis for concluding that a reasonable jury that found defendant guilty of possessing burglar tools on the basis of the given instruction would have returned a different finding, or no finding at all, if it had been told the intent was the felonious intent *to use* the tools for the purpose of breaking or entering. (See *Yates v. Evatt* (1991) 500 U.S. 391, 403 ["To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record."], disapproved on another point in *Estelle v. McGuire, supra*, 502 U.S. at pp. 72–73, fn. 4; cf. *Carella v. California* (1989) 491 U.S. 263, 271 (Scalia, J. concurring) ["When the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings is functionally equivalent to finding the element required to be presumed. The error is harmless because it is 'beyond a reasonable doubt' [citation] that the jury found the facts necessary to support the conviction."].) In short, we conclude there was no instruction error, but if there was error it was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.

13

_____
DONDERO, J.

We concur:


_____
HUMES, P.J.


_____
BANKE, J.

14