Filed 9/25/20  P. v. Andrade CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>KEVIN ANDRADE,<br><br>　　　Defendant and Appellant. | B295695<br>(Los Angeles County<br> Super. Ct. No. BA468226) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed.

N. Noelle Francis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Kevin Andrade appeals from a judgment of conviction after a jury convicted him of first-degree residential burglary (Pen. Code, § 459), but hung as to codefendants Douglas Perez and Katherine Fiallos.[1]  Defendant contends the trial court erred when it admitted evidence of defendant's participation in a prior burglary, because the incident was unduly prejudicial and had no tendency to prove intent. He also asserts error in the court's admission of unredacted evidence of another prior burglary involving Fiallos and an unknown male. Defendant contends these errors were cumulative and resulted in an unfair trial.  Finally, defendant contends insufficient evidence supports a finding that he intended to commit theft to support his burglary conviction.

We find no error in the admission of the prior burglaries, and conclude that sufficient evidence supports the finding that defendant intended to commit theft.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

By information, defendant, Perez, and Fiallos were each charged with committing first-degree residential burglary (§ 459) of an apartment complex located on Mariposa Avenue.  The three codefendants were jointly tried before a jury.

---

[1]     Unspecified references to statutes are to the Penal Code.  Perez and Fiallos are not parties to this appeal.

1.   *Prosecution Evidence*

    A.   *The Mariposa Burglary*

Around 5:00 a.m. on May 19, 2018, the property manager of an apartment complex located on Mariposa Avenue called 911 to report that a stranger had entered the complex's subterranean laundry room without permission. The property manager informed the police that the laundry room could be accessed only through the complex's subterranean parking garage, which was locked.

After the property manager unlocked the parking garage door to let Los Angeles Police Department Officers Terrel Maston and Antonio Velasco inside the garage, the officers walked to the laundry room and found defendant and Perez inside the room with the lights turned off. After defendant and Perez were detained, an officer who conducted a pat-down search of defendant found a flathead screwdriver and three gloves. Fiallos was later detained after a third officer saw her walking away from the apartment complex.

The prosecution played video footage from the complex front door and subterranean parking garage. Maston summarized the footage as follows. Around 4:00 a.m., defendant approached the apartment complex front door while pushing a bicycle. Wearing gloves, defendant used a screwdriver to pry open the door before walking with his bicycle to an elevator. Defendant took the elevator down to a subterranean parking garage. After exiting the elevator, defendant stopped inside the laundry room before walking to the garage door a short distance away. When defendant opened the door to let Fiallos inside, both individuals walked into the laundry room. As Fiallos remained inside

3

the laundry room, defendant walked into the parking garage emptyhanded, and began "zigzagging in and out of the cars" before returning to the laundry room holding unknown items. Defendant repeated this three times. Thereafter, Perez entered the apartment complex front door defendant had opened, and joined defendant and Fiallos inside the laundry room.

Approximately 10 minutes after the police left the apartment complex with defendant and Perez in custody, the property manager inspected the laundry room. During his inspection, he noticed that the coin slides to both laundry machines had been pushed "all the way in," and were in a different position than when he had seen them one or two days before the incident.

When Velasco conducted an inventory search of defendant's backpack at the station, he recovered a collapsible baton. According to Maston, a baton could be used to break windows during the commission of a burglary. Maston also testified that gloves (used to shield fingerprints or DNA) and a flathead screwdriver (used to pick or break a lock) could also be used as burglary tools.

B. *The Prior Leeward Avenue Burglary*

To establish defendant's intent and the absence of mistake or accident, the prosecutor apprised the court in his trial brief that he would seek to introduce evidence of defendant's participation in an August 9, 2017 vehicular burglary inside an apartment complex parking garage located on Leeward Avenue. Before the prosecution called its first witness, defense counsel objected. He argued that that

4

evidence of the Leeward Avenue burglary was not sufficiently similar to establish intent in this case, and would be used as propensity evidence. The prosecutor replied that the prior burglary inside an apartment complex parking garage was sufficiently similar, because in the Leeward Avenue burglary defendant had walked around the parking garage with a bicycle (as in the instant case) before receiving stolen items that his cohort had taken from a parked car. Defendant pleaded guilty to second degree vehicular burglary and was on probation when he was arrested for burglary in this case.

The court found the Leeward Avenue burglary sufficiently similar to the charged offense to establish intent and absence of mistake. The court further found that the probative value of the prior burglary was not substantially outweighed by the danger of prejudice under Evidence Code section 352, as the jury would be instructed on the limited purpose of the prior burglary under CALCRIM No. 375.[2] Nevertheless, the court prohibited the prosecutor from referencing defendant's conviction for the prior burglary.

---

[2]     Prior to ordering the jury into deliberations, the court instructed the jury under CALCRIM No. 375 as follows: "You may consider this evidence only if the People have proved by a preponderance of the evidence that [defendant] in fact committed the uncharged offenses. . . . [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that [defendant] committed the uncharged offense[], you may, but are not required to, consider that evidence for the limited purpose of deciding whether: [¶] A. The defendant acted with the intent to commit a theft in this case, or [¶] B. The defendant's alleged actions were not the result of mistake or accident. [¶] . . . [¶] Do not consider this evidence for any other purpose."

During trial, the prosecutor called Erika Renoj to testify about the Leeward Avenue burglary. Around 1:30 p.m. on August 9, 2017, as she was approaching her parked car inside the apartment complex where her mother lived, she noticed a "bent" above the door handle to the front passenger's side door. When she got closer, she saw the car door and glove compartment had been opened, and realized that registration papers, a toolbox, and $21 were missing.

Video surveillance of the burglary was played for the jury. The video surveillance, which we have reviewed, depicts two male individuals walking through the parking garage. One individual is pushing a bicycle while the other individual approaches Renoj's car before walking out of site. Approximately one minute later, one of the males reappears, crouches down near the front passenger door, and uses a tool to open the door. The front headlights of the car start flashing, and the individual walks a short distance away before returning and sitting in the front passenger's seat. The individual hands several items to the man holding the bicycle. Both individuals walk away from the car and exit the parking garage and apartment complex.

An investigating officer of the Leeward Avenue burglary used the video surveillance to create close-up photographs and crime flyers of the suspects. Following his arrest in the instant case for the burglary of the Mariposa Apartment complex, defendant told the investigating detective that he was depicted on the Leeward Avenue video surveillance as the man who was holding a bicycle and who received the items taken by the other individual from the parked car.

6

2.	*Defense Evidence*

Fiallos was the only defendant who testified.  She and defendant went to the Mariposa Avenue apartment complex because they were looking for a place to sleep, and both had previously been inside the laundry room.  After entering the laundry room, Fiallos asked defendant to step outside so that she could defecate in the sink.  When defendant returned, Fiallos asked whether defendant had anything she could use to clean herself.  Defendant left the laundry room and returned with a roll of paper towels, and left again after Fiallos asked for privacy.  Defendant left and returned multiple times with a bottle of bleach and other cleaning solution.

3.	*Verdict and Sentencing*

The jury found defendant guilty as charged.  The jury was deadlocked as to Fiallos and Perez, and the court declared a mistrial as to both codefendants.[3]  The court sentenced defendant to the middle term of four years imprisonment.  At the time of the offense, defendant was on formal probation for the Leeward Avenue burglary.  The court terminated probation and imposed the previously suspended sentence of three years in state prison, to be served concurrently with the sentence in this case.  The court imposed but stayed fines, fees, and assessments, based on defendant's inability to pay.

---

[3]	The jury foreperson informed the court that the jury was 10-2 in favor of guilt for both codefendants.

# DISCUSSION

1. *Admission of the Leeward Avenue Burglary*

Defendant contends the trial court abused its discretion by admitting evidence of the Leeward Avenue burglary. He asserts the prior burglary was unduly prejudicial and did not have the tendency to prove his intent to commit theft. We disagree.

## A. *Governing Law and Standard of Review*

"'Subdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition.' (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 [(*Ewoldt*)].) 'Evidence that a defendant committed crimes other than those for which he is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue . . . . [Citations.]'" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*).)

The trial judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect. (*Fuiava, supra,* 53 Cal.4th at p. 667.) "When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any

8

rule or policy requiring exclusion even if the evidence is relevant. [Citation.]' [Citation.]" (*Ibid.*)

B. *Analysis*

The trial court did not abuse its discretion in finding the evidence of the Leeward Avenue burglary was sufficiently similar to the charged offense to establish intent.

Evidence of a prior act is material if the prosecution seeks to use it to prove an element of the charged offense, such as intent. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 239–240 (*Hendrix*).) The principal question affecting the probative value of an uncharged prior act is its nature and the degree of similarity to the charged offense. (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1211.) The "least degree of similarity" between an uncharged act and the charged offense is required to prove intent. (*Ewoldt, supra,* 7 Cal.4th at p. 402.)

Because evidence of the Leeward Avenue burglary was used to establish defendant's intent in the Mariposa Avenue burglary, the least degree of similarity between both burglaries was required. (*Ewoldt, supra,* 7 Cal.4th at p. 402; *Hendrix, supra,* 214 Cal.App.4th at pp. 240–241.) In both burglaries, defendant unlawfully entered an apartment complex with a cohort and walked through a parking garage around parked cars. That defendant received items stolen from a car by an accomplice during the Leeward Avenue burglary is relevant to prove in the instant case that, as he was "zigzagging in and out of the cars" inside the Mariposa Avenue parking garage, he did so with the intent to

9

steal, and that he possessed that intent when he broke into the apartment complex. (See *People v. Rocha* (2013) 221 Cal.App.4th 1385, 1394 ["the question . . . is not the number of points of similarity but their logical relevance to establish the mental element of the charged offense"].)

Nor did the trial court abuse its discretion when admitting the evidence under Evidence Code section 352. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1286 [trial court's ruling will not be disturbed unless its exercise of discretion was """arbitrary, capricious, or patently absurd [and] resulted in a manifest miscarriage of justice"""].) Evidence of the Leeward Avenue burglary was no more inflammatory than evidence supporting the charged offense. (*People v. Leon* (2015) 61 Cal.4th 569, 599–600.) In the Leeward Avenue burglary, defendant received stolen property after his cohort broke into a parked car. Defendant's role in the burglary in this case was far more active: he forcibly broke into the apartment complex and let Fiallos and Perez inside. While walking through parked cars, defendant possessed a flathead screwdriver, gloves, and a collapsible baton, each of which were identified as potential burglary tools.

Quoting *People v. Gibson* (1976) 56 Cal.App.3d 119, 130 (*Gibson*), defendant asserts it would be "the essence of sophistry and lack of realism" to believe the jurors were capable of following the limiting instruction so as to refrain from improperly considering the evidence as propensity evidence.

But *Gibson* has been held to be "inapposite" where "[t]here is no evidence that the jury ignored the court's instructions and committed

10

misconduct by using limited evidence for an improper purpose. 'In the absence of evidence to the contrary, the presumption [that the jury adhered to the limiting instructions] will control.'" (*People v. Zack* (1986) 184 Cal.App.3d 409, 416 (*Zack*).) Defendant has not identified anything in the record to suggest that the jury disregarded the limiting instructions, and we presume it did not do so.

2.  *Admission of Unredacted Video and Photographs of the Ardmore Avenue Burglary Against Fiallos*

Despite the prosecution's use of the prior Ardmore Avenue burglary against Fiallos only, and despite the court's limiting instruction that the jury could not consider evidence of the Ardmore Avenue burglary against defendant, defendant contends that the evidence was unduly prejudicial to him under Evidence Code section 352, and that the trial court erred in admitting it. The contention is meritless.

A.  *Relevant Proceedings*

During trial, and outside the presence of the jury, defense counsel informed the court that the prosecution could soon introduce evidence regarding a prior burglary involving Fiallos and an unknown male on Ardmore Avenue in April 2018. Because the jury could infer that the unknown male depicted in video surveillance was defendant, counsel requested that the court limit the evidence to depict only Fiallos's presence and conduct. Despite the prosecutor's statement that the evidence would be used only against Fiallos, the court requested that

11

the parties draft a stipulation that the People were not claiming the individual was defendant.

On the next day of trial, the court excused the jury so that it could hold an evidentiary hearing. Outside the presence of the jury, the prosecutor called Officer Alberto Vazquez to testify about the Ardmore Avenue burglary. Vazquez summarized video surveillance of the footage as follows. A male and female approached the apartment complex front door on bicycles. As the unknown male pried open the front door with a screwdriver, the female, later identified as Fiallos, stood behind and watched. After the unknown male opened the door, he and Fiallos entered the lobby area where the male took a package sitting atop a mailbox. During a subsequent interview with police, Fiallos admitted she had taken a hammer from the Ardmore apartment complex. Fiallos did not identify her male cohort.

Following Vazquez's testimony, defense counsel again requested that the court eliminate depictions of the unknown male. The prosecutor replied that the unknown male's participation during the incident showed that he and Fiallos acted in concert, which was relevant to its theory that Fiallos had acted in concert with defendant and Perez during the Mariposa Avenue burglary. Nevertheless, the prosecutor agreed to stipulate to a statement that the unknown male depicted in the Ardmore Burglary was not defendant.

The court found the evidence to be admissible against Fiallos under Evidence Code section 1101, subdivision (b) to show intent, absence of mistake or accident, and a common plan or scheme. Concerned about the potential prejudicial effect of the evidence against

12

defendant, the court proposed giving an oral instruction to the jury before the introduction of evidence, and a written instruction for the jury to use during deliberations.

The court proposed and defense counsel agreed to the following oral instruction: "Today they are going to hear testimony as to an address on Ardmore as this evidence is not offered as to either Mr. Andrade or Mr. Perez. [¶] There is a male in a video and photograph. [¶] . . . [¶] It is not alleged at this time that the male is Mr. Andrade. [¶] For your purposes, it is an unknown male and can only be considered in this context." The court utilized the language "[i]t is not alleged at this time that the male is Mr. Andrade" because the parties informed the court that defendant could potentially be charged in the future, as the investigation of the Ardmore Avenue burglary was ongoing.

Prior to hearing testimony from Vazquez and the Ardmore Avenue apartment complex property manager, the court instructed the jury with the agreed upon limiting instruction.[4] During witness testimony, the prosecutor played the surveillance footage and showed still photographs of Fiallos and the unknown male holding a screwdriver.

_____

[4]    "Today you are about to hear testimony from a third location, this location, I believe, is on Ardmore, A-R-D-M-O-R-E. This evidence is not offered against Mr. Andrade nor is it offered against Mr. Perez. [¶] There is a male in the video and photographs that I anticipate you will see, but it is not alleged that the male is Mr. Perez. It is not alleged at this time that the male is Mr. Andrade. [¶] For your purposes, this is an unknown male and can only be considered in that context. As a result, it is apparent that this evidence that the People intend to offer is against Ms. Fiallos alone."

13

Prior to closing argument, the court provided the following written instructions to the jury:

"During the trial certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other.

"I instructed you during the trial that certain evidence was admitted only against certain defendants. You must not consider that evidence against any other defendant. [¶] . . . [¶]

"The People presented evidence that defendant . . . Fiallos committed the offense of burglary that was not charged in this case. Specifically the People presented evidence . . . [of] South Ardmore Avenue address as to Katherine Fiallos. You may consider this evidence only if the People have proved by a preponderance of the evidence that the individual defendant[] referenced above in fact committed the uncharged offenses. [¶] . . . [¶]

"Testimony and exhibits were presented in regard to an incident occurring on April 17, 2018, at 331 Ardmore in Los Angeles. . . . This testimony and the exhibits were admitted for the limited purpose as the court has instructed you. The evidence only relates to the case against Katherine Fiallos. This evidence does not relate to the cases against Kevin Andrade and does not relate to the case against Douglas Perez. Only consider the evidence against Katherine Fiallos. When

14

considering your verdicts as to Kevin Andrade and Douglas Perez, do not consider this evidence."[5]

In his closing argument, the prosecutor referenced the Ardmore Avenue burglary to argue that Fiallos had again acted as a lookout during the Mariposa Avenue burglary: "And in the video that you saw, defendant Fiallos rides up, takes a peek in before going out of view, standing behind acting like as a lookout while the unknown male approaches and pries the front door open with a screwdriver."

B.      *Analysis*

It is undisputed that evidence of the Ardmore Avenue incident was admissible against Fiallos to establish her participation in a common scheme as a lookout. Her role as lookout could not be established without depicting who she was looking out for (i.e. the unknown male). Because the evidence was admissible against Fiallos for this limited purpose, the question is "whether the defendant was properly protected from the danger of this evidence being misused by the jury, and considered by them as proof of matters other than that for proving which it was admitted." (*Adkins v. Brett* (1920) 184 Cal. 252, 259.)

Absent any suggestion by the prosecution that the unknown male was defendant, and considering the numerous limiting instructions, we conclude that defendant was adequately insulated from the danger that

---

[5]     The court gave a nearly identical instruction regarding the limited relevance of the Leeward Avenue burglary as against defendant only.

15

the jury would misuse the evidence against him. (See *People v. Young* (2005) 34 Cal.4th 1149, 1202; Evid. Code, § 355.) As provided throughout trial, the instructions clearly instructed the jury that it could not consider the Ardmore Avenue burglary against defendant for any purpose. Without any evidence that the jury ignored the instructions to use the evidence for an improper purpose, we presume the jury adhered to the limiting instructions. (*Zack, supra,* 184 Cal.App.3d at p. 416.)

We reject defendant's argument that the court's initial limiting instruction ("[i]t is not alleged at this time that the male is [defendant]") was prejudicial because it suggested the prosecution was more likely to allege in the future that the unknown male was defendant. Defendant's failure to object to the language, despite the court's inquiry to defense counsel whether he had any objection, constituted a forfeiture of any challenge to the instruction. (See *People v. Chism* (2014) 58 Cal.4th 1266, 1308.) Nevertheless, defendant's interpretation of the instruction, taken out of context, is unreasonably technical and inconsistent with the instructions as a whole. (*People v. Lucas* (2014) 60 Cal.4th 153, 282, disapproved on another ground by *People v. Romero and Self* (2015) 62 Cal.4th 1, 53–54, fn. 19; *People v. Kainzrants* (1996) 45 Cal.App.4th 1068, 1074.)

Even were we to conclude that the language of the instruction is reasonably susceptible to defendant's interpretation, defendant has not established that it was reasonably probable a result more favorable to him would have been reached in the absence of the error. (*People v.*

16

*Zunis* (2005) 134 Cal.App.4th Supp. 1, 4; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The case against defendant was strong without any use of the Ardmore Avenue burglary. Wearing gloves, defendant pried open the front door to the Mariposa Avenue apartment complex with a screwdriver before he walked down to the garage and opened the door for Fiallos. Defendant provided no reasonable explanation for why he had walked through parked cars multiple times, the behavior that was consistent with his previous participation in the Leeward Avenue burglary. That he did not use the baton he had in his backpack to break into a car does not mean that he did not previously harbor an intent to do so. (See *People v. Southard* (2007) 152 Cal.App.4th 1079, 1090 [possession of items that qualify as burglary tools supports inference defendant possessed felonious intent].) The jury could also readily infer that defendant, who had previously been inside the laundry room, not only intended but attempted to steal coins from the laundry machine (the property manager noted that the coin slots had been tampered with). Further, the jury's deadlock on Fiallos's guilt suggests that it did not consider evidence of the Ardmore Avenue burglary to be particularly powerful evidence. Thus, any error was harmless.

3.      *Cumulative Error*

As discussed, we either found no error with respect to any of defendant's claims, or that any error was harmless. There being no error to accumulate, defendant's assertion that cumulative error

17

resulted in an unfair trial necessarily fails. (*People v. Valdez* (2004) 32 Cal.4th 73, 139.)

4. *Sufficiency of Evidence to Support the Burglary Conviction*

Finally, defendant contends there is insufficient evidence to support the finding that he intended to commit theft at the time he entered the Mariposa Avenue apartment complex.

"'When the sufficiency of the evidence to support a conviction is challenged on appeal, we review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Gomez* (2018) 6 Cal.5th 243, 278 (*Gomez*).) We presume in support of the judgment ""the existence of every fact the jury could reasonably have deduced from the evidence."' [Citation.]" (*Ibid.*) We do not resolve credibility issues or evidentiary conflicts; the relevant inquiry is whether, in light of all the evidence, a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. (*Ibid.*)

Burglary requires an unlawful entry into a building "with intent to commit grand or petit larceny or any felony." (§ 459; see § 460 [first-degree burglary requires entry of an inhabited dwelling with requisite intent].) The crime of burglary is complete upon entry with the requisite intent "regardless of whether . . . any felony or theft actually is committed." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041–1042.)

18

The existence of felonious intent is rarely shown by direct proof and may be inferred from the facts and circumstances. (*People v. Holt* (1997) 15 Cal.4th 619, 669; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.)

As discussed, sufficient evidence supported defendant's intent to commit theft at the time he entered the Mariposa Avenue apartment complex. Considering the evidence, the jury could readily infer that that defendant broke into the apartment complex intending to steal items from parked cars, or from coins inside the laundry machines. (See *People v. Taylor* (2010) 48 Cal.4th 574, 627–628 [jury need not be unanimous as to what offense defendant was intending to commit when entering the premises].) Defendant interprets the facts in a manner contrary to the jury's verdict. That is not our role in this appeal; we do not reweigh the evidence or reevaluate witness credibility, but review the record in the light most favorable to the judgment. (*Gomez*, *supra*, 6 Cal.5th at p. 278.) Doing so here, we conclude sufficient evidence supports the burglary conviction.

//

//

//

//

//

//

//

//

//

19

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:

COLLINS, J.

CURREY J.