Filed 8/23/24  P. v. Salgado CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GUSTAVO ROJAS SALGADO,<br><br>    Defendant and Appellant. | D081441<br><br><br>(Super. Ct. No. SCE403413) |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Reversed in part, affirmed as modified, and remanded for resentencing with directions.

Mary Woodward Wells, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Gustavo Rojas Salgado guilty of, relevant here, first degree murder of Victor Garcia (Pen. Code, § 187, subd. (a)) and arson (§ 451,

subd. (d)), and found true the allegation that Salgado personally used a deadly weapon in the commission of the murder (§ 12022, subd. (b)(1)). Following a bifurcated bench trial, the court found true three aggravating circumstances. The court sentenced Salgado to an indeterminate term of 25 years to life for murder, plus one year for the personal use of a deadly weapon enhancement, and a consecutive three-year upper term for arson.

On appeal, Salgado challenges the sufficiency of evidence of premeditation and deliberation required for first degree murder. He also argues the jury instructions inadequately defined premeditation. We agree there is insufficient evidence to support a conviction of murder in the first degree and reduce the conviction to second degree murder. We thus need not address the jury instruction.

Salgado also argues the court abused its discretion in selecting the upper term for arson. As the People concede, the court improperly considered a fourth factor in aggravation but we need not address whether the error was harmless, as we remand the matter for a full resentencing.

We reverse in part, affirm as modified, and remand for resentencing with directions.

## I.

Salgado contends the jury's finding of premeditation and deliberation is not supported by substantial evidence, requiring us to reduce his murder conviction to second degree. Having reviewed the entire record with the following principles in mind, we agree.[1]

We review claims of insufficient evidence under the substantial evidence standard. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) In a

---

[1] We refer only to the facts that are relevant and necessary to resolve the issues on appeal.

criminal case, we review the entire record in the light most favorable to the judgment for substantial evidence that would allow any reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).) To be "'substantial,'" the "evidence must be of ponderable legal significance" (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644), "reasonable, credible, and of solid value" (*Zamudio*, at p. 357). Such evidence can include not only circumstantial evidence, but also all reasonable inferences that can be drawn from such evidence. (*People v. Soriano* (2021) 65 Cal.App.5th 278, 286.) "A reasonable inference, however, 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work[.]'" (*People v. Morris* (1988) 46 Cal.3d 1, 21 (*Morris*).) "'A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.'" (*Ibid.*)

"Murder is the unlawful killing of a human being . . . with malice aforethought." (Pen. Code, § 187, subd. (a).) Killing that is "willful, deliberate, and premeditated" is murder in the first degree. (§ 189, subd. (a).) Willfulness is undisputed in this case. Premeditation "encompasses the idea that a defendant thought about or considered the act beforehand." (*People v. Pearson* (2013) 56 Cal.4th 393, 443.) Deliberation refers to the careful weighing of considerations in forming a course of action. (*Ibid.*) Thus, "[a]n intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse." (*People v. Stitely* (2005) 35 Cal.4th 514, 543.) However, "[t]he true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated

judgment may be arrived at quickly." (*People v. Thomas* (1945) 25 Cal.2d 880, 900.)

In assessing the sufficiency of the evidence of premeditation and deliberation, a reviewing court typically analyzes three categories of evidence: (1) "'planning' activity" prior to the killing, showing the defendant engaged in acts intended to result in the death; (2) "'motive,'" inferred from the defendant and victim's prior relationship; and (3) "the nature of the killing," including whether the manner of killing was "so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design.'" (*People v. Anderson* (1968) 70 Cal.2d 15, 26-27.) Evidence of premeditation and deliberation is likely sufficient if it includes (1) some "evidence of all three types," (2) "extremely strong evidence" of planning, or (3) evidence of motive with evidence of either planning or manner of killing. (*Id.* at p. 27.) These "guidelines are descriptive," are "neither normative nor exhaustive," and "need not [be] accord[ed] . . . any particular weight." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 420.)

Salgado argues there is no evidence of planning activity or motive, and the brutal manner of killing evidenced "nothing more than the commission of a spontaneous act." The People concede there is "little evidence" of planning yet identify no such evidence, and our review of the record reveals none. The People argue, however, that evidence of motive and the manner of killing supports the jury's finding of premeditation and deliberation.

Regarding motive, the prosecutor below admitted to the jury: "the hardest part of this case is the why . . . why did [Salgado] do that [kill Garcia]? . . . We don't know." The People acknowledge on appeal the prosecutor "did not seek to establish" that Salgado had a "specific motive" for killing Garcia but argue the jury could have inferred two possible motives.

4

First, Garcia's mother testified she gave Garcia cash every day and he had substantial cash the night of the murder. Detectives did not find any wallet, identification, credit card, cell phone, or keys with Garcia's body. The People contend that because Salgado lived with Garcia for one to two months, Salgado knew he carried cash on him. Although the People do not state it, the inference would be that Salgado was motivated to murder Garcia to steal his money. But without any *evidence* that Salgado may have taken Garcia's money or that he was even in need of money, we are asked to speculate—and speculation is not substantial evidence. (*Morris*, 46 Cal.3d at p. 21.)

The People's second theory of motive is also speculative. Based on evidence that Garcia had asked Salgado to move out of his house, the People urge an inference that Salgado had "hard feelings" toward Garcia. To the contrary, Salgado's brother, who helped him move out, told a detective there was no argument about the move. There is no evidence to infer otherwise. We conclude there is no substantial evidence of motive.

The People contend the strongest evidence of premeditation and deliberation is the manner of killing. This category looks to "facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take [the] victim's life in a particular way for a 'reason' which the jury can reasonably infer" from facts regarding planning activity or motive. (*Anderson*, 70 Cal.2d at p. 27.) The People argue Salgado stabbed Garcia over 100 times, focusing on vital areas of Garcia's head, neck, and torso, and urge us to follow cases where injuries concentrated in areas vulnerable to fatal harm supported a finding of premeditation and deliberation. In each of the cases on which the People and the dissent rely, however, there was also substantial evidence of

5

motive and planning activity. (See *People v. Lewis* (2009) 46 Cal.4th 1255, 1292-1293; *People v. Hovarter* (2008) 44 Cal.4th 983, 1019; *People v. Elliot* (2005) 37 Cal.4th 453, 471; *People v. San Nicolas* (2004) 34 Cal.4th 614, 658-659, *People v. Pride* (1992) 3 Cal.4th 195, 247-248; and *People v. Perez* (1992) 2 Cal.4th 1117, 1126-1127.)

As in *Anderson*, "the condition of the victim's body in the instant case, *when considered in light of the absence of* any evidence of the defendant's conduct immediately prior to the killing or any 'unusual' relationship with the victim, points to a 'random' attack which was explosive rather than calculated." (*Anderson*, 70 Cal.2d at p. 30.) The People argue the placement and severity of the stab wounds in this case is distinguishable from those in *Anderson*, where the victim sustained 60 wounds, both severe and superficial, over her entire body. (*Id.* at p. 22.) However, there was arguably stronger evidence of particular and exacting acts there, including a cut extending from the rectum through the vagina and the partial cutting off of the victim's tongue. (*Ibid.*) Nonetheless, *Anderson* concluded the only inference the evidence reasonably supported was that the killing resulted from a "'random,' violent, indiscriminate attack rather than from deliberately placed wounds inflicted according to a preconceived design." (*Id.* at p. 32.) Here, too, the evidence "points only to a violent, brutal attack." (*Id.* at p. 33.) This is not a case where the manner of killing is so compelling, such as with an execution-style murder, to support a finding of premeditation and deliberation in the absence of evidence of planning and/or motive. (See e.g., *People v. Hawkins* (1995) 10 Cal.4th 920, 957.)

Finally, while evidence that Salgado tried to clean up the scene of the crime could bear on his state of mind after the killing, it alone does not support a finding of premeditation and deliberation. "Evasive conduct shows

6

fear: it cannot support the double inference that defendant planned to hide his crime at the time he committed it." (*Anderson*, 70 Cal.2d at p. 32.) We must focus on the difference between a first degree premeditated murder, which the People argue for, and a second degree murder, which Salgado concedes. And the People never attempt to suggest how the manner of cleaning up the scene and disposing of incriminating evidence would be different if this were only an intentional murder that was *not* premeditated. Moreover, in the case the People cite to argue otherwise, the post-killing evidence did not involve evasive conduct, there was other manner of killing evidence, and the court acknowledged the defendant's post-killing conduct alone would not have been sufficient to establish premeditation and deliberation. (See *Perez*, 2 Cal.4th at p. 1128.)

We conclude there is insufficient evidence on this record of premeditation and deliberation to support a conviction of murder in the first degree and that conviction must be reduced to murder in the second degree. We thus need not reach Salgado's argument that the jury instruction provided an insufficient definition of premeditation. The matter is remanded for a full resentencing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

II.

As the issue may resurface at resentencing, we briefly address Salgado's argument that the trial court abused its discretion by imposing the upper term of imprisonment for arson. The People concede the court improperly relied on an aggravating factor that was not found true by a trier of fact or admitted by Salgado. We agree.

The trial court may impose an upper term only when justified by circumstances in aggravation and "the facts underlying those circumstances

7

have been stipulated to by the defendant" or "found true beyond a reasonable doubt" at a jury or bench trial. (§ 1170, subd. (b)(2).)

Here, after a bench trial on three aggravating factors—that Salgado (1) had numerous serious convictions, (2) was on felony probation during the offense, and (3) had unsatisfactory performance while on probation—the court found them all true beyond a reasonable doubt. At sentencing, however, the court invoked a fourth aggravating factor that Salgado engaged in violent conduct, determined "the circumstances in aggravation outweigh those in mitigation," and selected the upper term for arson.

As asserted by Salgado and conceded by the People, the court erred in considering the fourth aggravating circumstance. Because we remand for a full resentencing, we need not address whether the error was harmless but caution the court to comply with section 1170 on remand.

III.

We reverse in part and reduce the conviction for first degree murder under Penal Code section 187, subdivision (a), to second degree murder. As modified, we affirm the judgment of conviction. We remand for a full resentencing consistent with this opinion. Upon resentencing, the court is directed to prepare and forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.

CASTILLO, J.

I CONCUR:


DATO, Acting P. J.

8

RUBIN, J., Dissenting.

I respectfully dissent. The issue in this case is whether any rational jury could find Salgado committed a premeditated and deliberate murder when he killed Victor Garcia. This attack included over one hundred knife wounds inflicted by Salgado on Garcia primarily to Garcia's torso and head. I would find that viewing the judgment in the "light most favorable to the prosecution and presum[ing] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence to determine whether the record discloses substantial evidence" (*People v. Southard* (2007) 152 Cal.App.4th 1079, 1085), the jury could find the evidence before it supported premeditation and deliberation. (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1015 (*Hovarter*) [" ' "An appellate court must accept logical inferences that the jury might have drawn from the evidence even if the court would have concluded otherwise" ' "].)

A.    *Analysis*

Relying primarily on *People v. Anderson* (1968) 70 Cal.2d 15, Salgado argues inadequate evidence supports a first degree murder conviction. But in the many years since *Anderson*, our Supreme Court, has placed in context the *Anderson* ruling, emphasizing " 'that its guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 324.) Indeed, "[t]he *Anderson* guidelines were formulated as a synthesis of prior case law, and are not a definitive statement of the prerequisites for proving premeditation and deliberation in every case." (*People v. Hawkins* (1995) 10 Cal.4th 920, 957, overruled on another ground in *People v. Blakeley* 23 Cal.4th 82.) In fact, "[t]he *Anderson* factors, while helpful for purposes of

review, *are not a sine qua non* to finding first degree premeditated murder, *nor are they exclusive.*" (*People v. Perez* (1992) 2 Cal.4th 1117, 1125, italics added (*Perez*).) Importantly, the *Anderson* factors "are not elements of premeditation and deliberation." (*People v. Shamblin* (2015) 236 Cal.App.4th 1, 10.)

Applying these rules to the evidence here supports the jury's finding of a premeditated and deliberate murder. The proof on which I focus is broadly of two kinds. First, there is a crime scene containing a body with over one hundred assaultive wounds, including stab wounds of various severity and many incised wounds. Second, there are post-crime actions including clean-up activities and false statements by Salgado to the police. I start with Garcia's body.

### 1. *Victor Garcia's Body*

The medical examiner's testimony about the victim's body reveals Garcia suffered "multiple sharp force injuries, incised wounds or cuts, and stab wounds of the head, neck, torso and extremities, and some blunt force injuries, abrasions and contusions on his neck, torso and left leg." The fact that there are "blunt force injuries," as well as "sharp force injuries" and "abrasions," reflects a change in weapons or tactics during the murder. A reasonable jury could conclude, therefore, that this was more than a rash, impulsive attack, but reflected a premeditated, deliberate, and willful effort to kill Garcia. (See *Perez*, *supra*, 2 Cal.4th at p. 1127 [getting another weapon after the first one broke during murder supports finding of premeditation and deliberation].) That's especially true here when we look at the wounds themselves.

Salgado inflicted 38 sharp force injuries (stabbing, slicing, cutting) to Garcia's head and neck. Garcia also suffered 22 sharp force injuries to his

2

torso and back, 19 to his right arm and 22 on his left arm.  In all, Garcia suffered more than one hundred sharp force wounds.  This many individual injuries would take time to inflict, and any reasonable jury could conclude this murder did not occur quickly.  Indeed, if a killing endures for a period of time sufficient to allow a killer to consider his actions, that supports a finding of premeditation and deliberation.  (*Hovarter*, *supra*, 44 Cal.4th at p. 1020 ["This prolonged manner of taking a person's life, which requires an offender to apply constant force to the neck of the victim, affords ample time for the offender to consider the nature of his deadly act, from which a jury can find premeditation and deliberation"].)  That is the situation here.

Even if a jury determined this killing started as an unplanned event, they could rationally conclude that Salgado's assault on Garcia evolved during the attack from an impulsive act to one demonstrating Salgado's reflecting on, and then deciding, to kill Garcia.  That's premeditated and deliberate murder.  " ' "Premeditation and deliberation can occur in a brief interval.  'The test is not time, but reflection.  "Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." ' " ' "  (*People v. Solomon* (2010) 49 Cal.4th 792, 812.)

Significant, aside from the number of wounds, is their effectiveness.  In addition to what are described by the medical examiner as defensive wounds on Garcia's forearms, three of the most serious injuries occurred to his head and neck:  A stab through the mouth; a stab to the skull that cracked it; and a stab into Garcia's neck, which cut open his jugular (and his voice box), and struck the spine, fracturing it.  Another stab wound went into the victim's diaphragm.  Two more punctured Garcia's right lung.  Any jury viewing this evidence rationally could conclude Salgado was alert, focused and goal oriented, targeting Garcia's vital areas.  (See *People v. Elliot* (2005)

3

37 Cal.4th 453, 471 [where victim stabbed 82 times, with two slashes to her throat "[t]he jury could have construed the repeated slashing of [the victim's] throat, in connection with the dozens of other wounds, as intimating a preconceived design to kill"].)

Further, a reasonable jury could conclude that, after a series of injuries that cracked bone and penetrated muscle tissue, Salgado was aware of what he was doing and wanted to make sure that the victim died. As an illustration, once Salgado cut open Garcia's jugular vein, blood would be "eject[ed] under hydraulic pressure." However, the cascading blood did not stop the attack, suggesting Salgado wanted to make certain Garcia died. This too supports a jury's finding that if not from the very beginning, at some point, Salgado's mental state encompassed premeditation and deliberation in the continued fatal attack.

The jury also heard that several of Garcia's injuries showed minimal blood loss (lack of hemorrhaging) —for example, stab wounds deep enough to puncture the diaphragm, through the victim's right flank, and to his lower back— which "indicate that the decedent had minimal blood volume left in his circulation, meaning he had already lost a large amount of blood, there wasn't more blood to leak out into the tissue, or it could mean that he had very poor circulation or no circulation, meaning the heart had stopped." Put another way, he bled out, his jugular injury was no longer under pressure— which would be visible because it would not be ejecting blood—the victim was for all intents and purposes dead (but not legally so), and still Salgado stabbed him. Again, a jury could conclude Salgado was being thorough and making sure the victim died. That reflects following through with a plan to kill, which is classic premeditation and deliberation. "*A violent and bloody death sustained as a result of multiple stab wounds can be consistent with a*

4

*finding of premeditation.*" (*People v. Pride* (1992) 3 Cal.4th 195, 247, italics added (*Pride*).) This evidence alone would support the jury's finding on premeditation and deliberation. However, the jurors received more facts supporting their conclusion. I turn now to Salgado's actions after killing Garcia.

   2.   *Post-crime Actions*

The jury heard information about post-crime activities. These we do not consider in isolation from other evidence in this case. (See *People v. Thompson* (2010) 49 Cal.4th 79, 113 ["While . . . *Anderson* thus warns against using evidence of a defendant's postcrime actions and statements as the *sole* support for upholding a finding of premeditated and deliberate murder, such postcrime actions and statements can support a finding that defendant committed a murder for which his specific mental state is established by his actions before and during the crime" (italics added)], *Perez, supra,* 2 Cal.4th at p. 1128 [post-crime actions probative of premeditation and deliberation]; *People v. Eggers* (1947) 30 Cal.2d 676, 686 ["the means of disposing of the body, the efforts made to prevent identification, and [defendant's] conduct both prior to and immediately after the crime was committed" supported the jury's conclusion that the crime was premeditated and deliberate].)

Here, there is no evidence to suggest Salgado called police or an ambulance to assist Garcia. (See *People v. Williams* (2018) 23 Cal.App.5th 396, 412.) Rather, evidence showed efforts by Salgado, and later his brother, to clean the crime scene afterwards. The question is whether those activities reflect pre-attack planning. Here, the post-event activities include: partially stripping Garcia's body, efforts to clean the area where the murder occurred, getting two drivers—one for victim's truck, one for the getaway vehicle, loading Garcia's clothes into the truck driving to Fiesta Island, and bringing

5

material to ignite Garcia's vehicle.  A rational jury could find these activities reflect pre-event, organized planning of how to dispose of valuable evidence linking defendant to the murder, notions consistent with premeditation, not impulsive actions.  (*Perez, supra,* 2 Cal.4th at p. 1128 [conduct after a killing may reflect on whether a murder is planned or impulsive].)  Here, the post-murder actions took planning, coordinating, and considered reflection to concoct.  A reasonable jury could conclude such activity, combined with the manner Salgado killed Garcia, demonstrated that during the murder Salgado acted with premeditation and deliberation.  As our supreme court said, "[i]f the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding."  (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

In addition to the physical evidence, jurors heard untruthful statements made by Salgado to law enforcement.  For instance, of the injuries Salgado sustained during the murder, he told detectives that he sustained the wounds after using methamphetamine, falling, and waking up with a cut to his hand from the mishap.  And, when confronted by law enforcement about Garcia's death, Salgado claimed he knew nothing of it.  Such actions reflect purposeful evasion which, when considered with the other evidence discussed above, a reasonable jury could determine reflected the overall premeditated and deliberate nature of the murder.  "Of course, the appellate court does not substitute its judgment for that of the jury but affirms the verdict if a rational trier of fact could find premeditation and deliberation beyond a reasonable doubt."  (*Pride, supra,* 3 Cal.4th at p. 247.)  I would find here the jury acted like any rational jury and that sufficient evidence

6

supports the verdict.  Therefore, I dissent regarding reversal of the premeditation and deliberation finding.

Further, finding the balance of Salgado's arguments unconvincing, I would find no error and affirm the judgment.


RUBIN, J.